SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Gene Hinton** (A-3/4-12) (070386)

**Argued May 14, 2013 -- Decided October 24, 2013**

**PATTERSON, J., writing for a majority of the Court.**

In this appeal, the Court determines whether, following execution of a warrant of removal in an eviction proceeding, a defendant has a constitutionally protected reasonable expectation of privacy in an apartment he previously shared with his mother.

Until her death in March 2009, defendant Gene Hinton's mother was the tenant in an apartment owned by the Newark Housing Authority. Although Hinton had his mother's consent to reside in the apartment, he did not have a lease or any other documents identifying him as a tenant. On an unknown date, the landlord commenced a summary dispossession action, and a warrant of removal was issued on March 31, 2009. On April 6, when no one answered his knock, Special Civil Part Officer Ricardo Pratt served the warrant by placing it under the apartment door. The warrant warned that any persons were required to vacate the premises by April 10, at which time a court officer would remove any remaining persons and the landlord could remove all property from the apartment and repossess it. It further explained that the tenant could attempt to stop execution by applying to the court for relief.

On April 13, one week after serving the warrant, Pratt performed a non-payment of rent eviction, searching the apartment to ensure that it was safe and there were no fire hazards or hidden occupants. When checking the bedroom, Pratt saw a "wide open" shoe box in the middle of the bed containing what he believed to be illegal drugs, as well as two bags containing a large amount of money and more envelopes of drugs. Pratt alerted the Newark Police Department, had the locks changed, and waited outside for officers to arrive. Although the warrant of removal did not authorize the officers to search the apartment, they entered and identified the drugs as heroin. Hinton arrived and explained that he lived in the apartment alone since his mother's death. After confirming that he owned the shoe box, Hinton was arrested.

Hinton moved to suppress his statements to the police, as well as the evidence seized from the apartment. The trial court denied the motion, holding that Pratt's actions were not governmental in nature and the officers had probable cause to conduct a search based on Pratt's reliable citizen informant tip. Although it did not address whether Hinton had a reasonable expectation of privacy, it found that the State's actions fell within the plain view exception to the warrant requirement. Hinton was convicted of third degree possession of a controlled dangerous substance and possession with intent to distribute and was sentenced to two years of probation.

Hinton appealed his conviction and sentence, arguing that: (1) his motion to suppress the seized evidence should have been granted; (2) his statements to police were improperly admitted; (3) the court's verdict was against the weight of the evidence; and (4) his sentence should be modified. The Appellate Division agreed that Pratt's entry into the apartment did not raise constitutional issues, but determined that Hinton had a reasonable expectation of privacy in the premises. The panel explained that execution of the warrant of removal did not terminate Hinton's ownership interest, and he retained access to potential legal remedies such as a stay. Therefore, the officers conducted an improper warrantless search. Without reaching Hinton's other arguments, the panel reversed the denial of his suppression motion and his conviction. The Court granted the State's petition for certification and Hinton's cross-petition, which preserved those issues not reached by the Appellate Division. 212 N.J. 106 (2012).

**HELD:** Where, as here, an eviction proceeding has advanced to the point that a warrant of removal has been executed, a tenant does not have a reasonable expectation of privacy in the premises. Therefore, the police action in Hinton's apartment was not a "search" under either the Fourth Amendment of the United States Constitution or Article I, Paragraph 7 of the New Jersey Constitution.

1.  New Jersey's Anti-Eviction Act authorizes removal of tenants from property for reasons including nonpayment of rent, and, along with the Tenant Hardship Act, establishes the steps for removal.  The first step requires issuance of a warrant of removal no earlier than three days following entry of a judgment for possession.  In accordance with the Fair Eviction Notice Act, the warrant must provide notice of the tenant's right to apply for a stay, the method for execution of the warrant, and the procedures under which the landlord may remove the tenant's property.  Once the warrant is issued, it may not be executed for another three days.  After expiration of this second three-day period, a court officer may remove the tenant and any other persons from the premises.  Where, as here, a warrant of removal is issued for nonpayment of rent, the tenant is on notice during the second three-day period that dispossession, including a lockout, may be imminent.  Although the Special Civil Part retains jurisdiction for ten days to hear any application by the tenant for lawful relief, the tenant's status has fundamentally changed once this pivotal stage in the process is reached.  (pp. 16-21)

2.  When the Court reviews a ruling applying legal principles to factual findings, it defers to the factual findings but reviews de novo application of the legal principles.  Turning first to the question of whether Hinton's rights were violated under the Fourth Amendment to the United States Constitution, the Court notes that consideration of an objection to the admission of evidence obtained by a search or seizure requires a threshold determination of whether the challenged search or seizure violated the defendant's reasonable expectation of privacy.  To that end, the United States Supreme Court dispensed with a separate standing inquiry and implemented a two-pronged inquiry regarding the extent of a defendant's rights under the Fourth Amendment, asking whether: (1) the defendant manifested a subjective expectation of privacy in the object of the search; and (2) the expectation of privacy was reasonable.  A tenant's reasonable expectation of privacy can hinge on his or her legal status following an eviction.  Here, assuming defendant satisfies the first prong, he fails to make a showing on the second prong.  When Hinton left the apartment on April 13, 2009, he was on notice that a court officer could enter, restore control of the premises to the landlord, and prohibit Hinton's access.  Thus, any reasonable expectation of privacy Hinton may have had in the apartment was terminated at this stage of the eviction proceeding.  (pp. 21-28)

3.  Article I, Paragraph 7 of the New Jersey Constitution similarly protects individuals from warrantless searches of homes.  Unlike federal law, New Jersey law confers automatic standing on a defendant to object to the admission of seized evidence where, as here, the defendant is charged with an offense in which possession is an essential element of guilt.  However, Hinton's automatic standing to file a suppression motion does not necessarily equate to a finding that he had a substantive right of privacy which would mandate grant of his motion.  Rather, since the merits of the motion rest on whether Hinton possessed a reasonable expectation of privacy in the premises, that issue must be addressed as part of the substantive constitutional analysis.  (pp. 28-33)

4.  Unlike the federal two-pronged test, New Jersey law only requires that the expectation of privacy be reasonable.  New Jersey courts have found that the reasonableness of a defendant's expectation of privacy in a particular premises turns in large part on his or her legal right to occupy it.  Here, as of the date of the search, Hinton had been on notice for a week that an eviction proceeding was pending and had reached a pivotal stage.  During that time, he never sought court intervention.  At that point, any expectation of privacy on Hinton's part was unreasonable.  Thus, under the particular circumstances of this case, the police action was not a search for purposes of the federal or State constitution.  However, because this conclusion does not entirely resolve the question of whether the trial court properly denied Hinton's motion to suppress, the matter must be remanded to the Appellate Division for consideration of Hinton's challenge with respect to the seizure of the disputed evidence, as well as the other issues that were not previously addressed by the Appellate Division.  (pp. 33-40)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the Appellate Division for further proceedings in accordance with the Court's opinion.

**JUSTICE ALBIN, DISSENTING,** joined by **JUDGE RODRÍGUEZ,** expresses the view that a defendant who possesses automatic standing to object to a search under New Jersey law should not be required to clear another layer of standing by establishing a reasonable expectation of privacy, and that such a requirement contravenes New Jersey case law and could lead to confusion if expanded beyond the novel scenario in this case.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA and HOENS join in JUSTICE PATTERSON's opinion.  JUSTICE ALBIN filed a separate dissenting opinion, in which JUDGE RODRÍGUEZ (temporarily assigned) joins.  JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

        Plaintiff-Appellant
        and Cross-Respondent,

                v.

GENE HINTON,

        Defendant-Respondent
        and Cross-Appellant.


                Argued May 14, 2013 – Decided October 24, 2013

                On certification to the Superior Court,
                Appellate Division.

                Emily R. Anderson, Deputy Attorney General,
                argued the cause for appellant (Jeffrey S.
                Chiesa, Attorney General of New Jersey,
                attorney).

                Matthew Astore, Deputy Public Defender,
                argued the cause for respondent (Joseph E.
                Krakora, Public Defender, attorney; Mr.
                Astore and Anthony J. Cariddi, Designated
                Counsel, on the briefs).

                Alexander R. Shalom argued the cause for
                amicus curiae American Civil Liberties Union
                of New Jersey Foundation (Edward L. Barocas,
                Legal Director, attorney).

        JUSTICE PATTERSON delivered the opinion of the Court.

        In this appeal, the Court determines whether, after a court

officer executed a warrant of removal that had been issued in an

eviction proceeding, defendant Gene Hinton had a

1

constitutionally protected reasonable expectation of privacy in the apartment he had previously shared with his mother.

In March 2009, defendant's mother, the legal tenant of the apartment, died. On a date not revealed in the record, the apartment's owner, evidently unaware of the tenant's death, instituted an action to summarily dispossess her for nonpayment of rent. The eviction action proceeded and the court issued a warrant of removal pursuant to N.J.S.A. 2A:18-57. The warrant directed a court officer to dispossess the tenant and restore full possession of the apartment to the landlord after the expiration of a three-day grace period. The warrant further ordered the tenant to immediately vacate the premises pending an imminent dispossession. A week after the warrant was left at the apartment, a court officer entered the apartment to conduct a safety inspection and change the locks. During the inspection, the court officer saw a shoe box containing envelopes of heroin and a bag of currency on the bed in defendant's bedroom. He summoned police. Upon their arrival, police officers entered the apartment without a warrant and seized the shoe box. Officers arrested defendant upon his arrival at the apartment.

Defendant was indicted for several drug possession offenses. Prior to trial, he moved to suppress the evidence found at the apartment. The trial court denied the motion to

2

suppress and, after a bench trial, convicted defendant of two third-degree offenses. The Appellate Division reversed defendant's conviction. It held that defendant had a reasonable expectation of privacy in his mother's apartment and that the police had conducted a warrantless search that violated defendant's constitutional right against unreasonable search and seizure. We granted the parties' cross-petitions for certification.

We reverse the Appellate Division's judgment. We hold that at the advanced stage to which the eviction had proceeded, defendant did not have a reasonable expectation of privacy under federal or state constitutional norms. Defendant was served with official notice that a court officer would soon enter the premises and repossess it on the landlord's behalf. If, notwithstanding that notice, defendant maintained a subjective expectation of privacy in the apartment and the items in dispute, his expectation was objectively unreasonable. Accordingly, the officers did not conduct a search prohibited by the Fourth Amendment to the United States Constitution or Article I, Paragraph 7 of the New Jersey Constitution.

We remand the matter to the Appellate Division for consideration of the constitutionality of the officers' seizure of the disputed evidence and for review of the other issues

raised by defendant that the panel did not determine in light of its earlier judgment.

                              I.

The factual record considered by the trial court and reviewed on appeal was developed in the May 25, 2010 suppression hearing conducted by the trial judge. The State presented three witnesses: Special Civil Part Officer Ricardo Pratt of the Superior Court of New Jersey, Newark Police Officer Carmen Rivera and Newark Police Sergeant Thomas Roe. Defendant did not testify or present witnesses at the hearing.

The setting of this case was an apartment owned by the Newark Housing Authority. Defendant's mother, Essie Hinton, was the "occupant or at least the lease holder" of the apartment from an undetermined date until her death in March 2009. On a date that is not revealed in the record, the landlord commenced a summary dispossession action. On March 31, 2009, a Superior Court judge issued a warrant of removal with respect to the Hinton apartment, addressed to Ms. Hinton as "tenant." The warrant of removal instructed a Special Civil Part Officer to "dispossess the tenant and place the landlord in full possession of the premises." It directed the officer to "remove all persons and property from the . . . premises within three days after receiving this warrant." The warrant also advised of the consequences of the failure to vacate: "[i]f you fail to move

                              4

within three days, a court officer will thereafter remove all persons from the premises at any time between the hours of 8:30 A.M. and 4:30 P.M." on April 10, 2009, and, "[t]hereafter, your possessions may be removed by the landlord, subject to applicable law (N.J.S.A. 2A:18-72 et seq.)."  The warrant of removal further instructed the tenant:

> You may be able to stop this warrant and remain in the premises temporarily if you apply to the court for relief.  You may apply for relief by delivering a written request to the Clerk of the Special Civil Part and to the landlord or landlord's attorney.  Your request must be personally delivered and received by the Clerk within three days after this warrant was served or you may be locked out.  Before stopping this warrant, the court may include certain conditions, such as the payment of rent.

The warrant provided that only a court officer could execute it, and barred a landlord "to padlock or otherwise block entry to a rental premises while a tenant who lives there is still in legal possession."

On April 6, 2009, Special Civil Part Officer Pratt served the warrant.  He "gave the tenant or the defendant, the owner of the apartment, Ms. [Essie] Hinton . . . 72 hours['] notice from April 6th of 2009 and she was to vacate the apartment by April 10th, 2009."  Special Civil Part Officer Pratt served the warrant by placing it under the door, his customary practice when a resident fails to respond to a knock on the door.

5

Special Civil Part Officer Pratt knew of no tenant other than Ms. Hinton, whose name was listed on the warrant. He testified that defendant's name was not associated with the apartment.

Special Civil Part Officer Pratt further testified that when he confronts a situation in which a tenant does not vacate the premises within three days after service of a warrant of removal, his practice is "to go there and remove any persons within the apartment so that [he] may change locks and . . . place the landlord in possession of the apartment." In addition to padlocking the door, Special Civil Part Officer Pratt's routine is to "go through the entire apartment." His responsibility is "to check under the beds, . . . check inside the closets, and . . . make sure there[ are] no fire hazards or any persons hiding in the apartment." Although the warrant permits the landlord to remove property inside the apartment, Special Civil Part Officer Pratt's "authorization has nothing to do with the property inside the apartment other than making sure that it's safe" and verifying there are "no fire hazards."

Special Civil Part Officer Pratt followed that practice on the afternoon of April 13, 2009, one week after he served the notice at the Hinton apartment. He performed what he characterized as a "non-payment-of-rent eviction for Newark Housing Authority." Special Civil Part Officer Pratt signed and dated the warrant. He went to the apartment with a repairman,

6

who was given keys to the building by the building manager and was assigned to change the locks. Special Civil Part Officer Pratt entered the apartment and initially determined that the living room and bathroom were clear. He proceeded to the bedroom, where he "saw a shoe box in the middle of the bed" containing what he thought were illegal drugs. Special Civil Part Officer Pratt testified that in the "wide open" shoe box "there was one of these packages that was opened[ a]nd some of the little envelopes that [he] recognize[d] as heroin [were] spilling out into the shoe box." Furthermore, Special Civil Part Officer Pratt testified that there were more envelopes in a blue bag and another bag with "a large amount of currency" on the bed.

Special Civil Part Officer Pratt called the Newark Police Department and told them what he had found. He then instructed the repairman to continue to change the locks. When that job was completed, Special Civil Part Officer Pratt locked the door, left the apartment and waited outside for the officers to arrive.

Officer Rivera, with Officer Ana Colon, responded to Special Civil Part Officer Pratt's call within five to ten minutes. They knew from the phone call that Special Civil Part Officer Pratt had found what he thought to be drugs inside the apartment and their "purpose was to verify that it was true."

7

When Officers Rivera and Colon arrived, Special Civil Part Officer Pratt informed them that "he had a warrant to padlock the door due to the fact that . . . the resident had passed, died two weeks prior." Special Civil Part Officer Pratt explained to the officers that he had entered the apartment "to ensure that there . . . were no animals or persons inside before he padlocked the door," and that in the course of his inspection "he came across the shoe box containing [heroin] and money." He showed the officers the warrant of removal, which did not authorize them to search the apartment. By Officer Rivera's admission, the officers had sufficient time to obtain a search warrant because the lock on the apartment had been changed by the time they arrived. They did not, however, obtain a warrant before their entry into the apartment.

Special Civil Part Officer Pratt opened the apartment door and showed Officers Rivera and Colon the shoe box and bag on the bed. According to Officer Rivera, the officers observed heroin wrapped in bundles of magazine paper. The officers summoned their supervisor, Sergeant Rodriguez. When Sergeant Rodriguez arrived at the scene, he examined the box and identified the contents as heroin. Defendant's niece arrived and informed the officers that defendant had been living in the apartment. Officer Colon contacted Sergeant Roe, advising him that they found "narcotics and currency . . . inside the apartment." When

8

Sergeant Roe arrived, the other police officers were waiting in the hallway with Special Civil Part Officer Pratt.

At that moment, defendant arrived. He "pointed at the apartment as being his," and asked, "what's going on? What's going on? This is my place." After identifying himself, Special Civil Part Officer Pratt advised defendant that he was serving a warrant of removal and was there to padlock the door. Sergeant Rodriguez asked whether anyone lived or stayed in the apartment with defendant, and defendant responded that his mother had recently passed away and that he currently lived alone. Defendant admitted that he had neither a lease nor other paperwork identifying him as a tenant of the apartment. Sergeant Roe did not request or obtain defendant's permission to enter the premises. Sergeant Roe testified that "according to the Housing Authority, there was no bona fide resident" of the apartment, in light of Ms. Hinton's recent death.

Accompanied by Sergeants Rodriguez and Roe and Special Civil Part Officer Pratt, defendant entered the apartment and approached the items on the bed. Defendant confirmed that the room was his bedroom and that he was the owner of the shoe box on the bed. He was taken to the living room of the apartment and arrested.[1]

---

[1] Defendant testified at the bench trial. He told the court that he was fifty years old. He testified he had lived in the

9

II.

Defendant was indicted for third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1), second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(2), third-degree possession of CDS with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7, and second-degree possession of CDS with intent to distribute within 500 feet of a public housing facility, park or building, N.J.S.A. 2C:35-7.1.  He unsuccessfully sought admission into pre-trial intervention (PTI), and, subsequently, the case proceeded to trial.

Defendant moved to suppress his statements to the police and the drugs and related items seized from the apartment. Following the evidentiary hearing at which the trial judge

_____

apartment, which was in a senior citizens' building, for six years with his mother's consent and with the knowledge of the building manager, and that his nephew also frequented the apartment.  He admitted that he received notice of the warrant of removal about four days prior to the April 13, 2009 lockout. He stated on the morning of April 13, 2009, he went to court in an unsuccessful attempt to try to stop the eviction proceeding. He said that he had confirmed with the building manager that the rent was current.  Defendant testified that he was handcuffed outside of the apartment and escorted inside, and that he had confirmed his ownership of the shoe box although he did not know at the time that it contained heroin.  He denied ever having seen or possessed heroin.  Because defendant's testimony was not before the trial judge when he decided the motion to suppress, it is not part of the record reviewed in this appeal.  See State v. Carvajal, 202 N.J. 214, 219 n.1 (2010) (considering only stipulated facts for review of motion to suppress); State v. Mai, 202 N.J. 12, 17-18 (2010) (limiting review of facts to those "adduced before [the court] at the suppression hearing").

10

elicited the factual record set forth above, the court denied the motion to suppress. It held that Special Civil Part Officer Pratt's actions were not governmental action for purposes of the constitutional analysis because Special Civil Part Officer Pratt was a private individual conducting a court-authorized action. The court then found that, under the totality of the circumstances, the police officers had probable cause to conduct a search because Special Civil Part Officer Pratt was a citizen informant and provided a reliable tip, and that the officers conducted a fluid and unplanned investigation in response to that tip. The court did not determine whether defendant had a reasonable expectation of privacy that was violated by the officers' entry into the apartment or whether a warrant was required for that entry. It concluded that the plain view doctrine did not apply because the initial observation of the evidence was made by a private citizen, not one of the police officers. Nevertheless, the court found the State's actions fell within the plain view exception to the warrant requirement. The court also denied defendant's motion to suppress the statements that he made to the police, holding that the officers' questioning was only a field inquiry that did not implicate Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

11

At his bench trial, defendant's strategy was to deny that the heroin found by Special Civil Part Officer Pratt was his. Defendant's counsel argued that when defendant identified the box on the bed as his, he did not see the heroin and was unaware of its presence. Defense counsel emphasized that defendant's nephew shared access to the apartment and suggested that the drugs belonged to defendant's nephew, not defendant.

The trial judge rejected this argument. He found defendant's testimony to be inconsistent and found the State's witnesses to be more credible. The judge found that the heroin and money were in defendant's possession for purposes of distribution, given the quantity of both. He convicted defendant of third-degree possession of CDS and third-degree possession of CDS with intent to distribute. The trial judge denied defendant's motion for a new trial and affirmed the prosecutor's denial of defendant's renewed application for PTI.

Prior to sentencing defendant, the trial judge merged the possession offense into the distribution offense. Finding no aggravating factors but considering several mitigating factors, including defendant's age, lack of a prior criminal record, lack of a history of substance abuse, and stable employment, the trial judge sentenced defendant to two years of probation.

Defendant appealed his conviction and sentence. He argued that his motion to suppress the heroin and money should have

12

been granted.  He also challenged the admission of his statements to police, argued that the trial judge's verdict was against the weight of the evidence, and sought modification of his sentence.

The Appellate Division reversed the trial court's denial of defendant's motion to suppress the drugs and money and, accordingly, reversed his conviction.  The panel agreed with the trial court that Special Civil Part Officer Pratt's entry into the apartment raised no constitutional issues.  It found, however, that defendant had a reasonable expectation of privacy in the apartment and that the officers therefore conducted a warrantless search.  The panel relied in part on defendant's testimony that he had his mother's consent to remain in the apartment and that the superintendent was aware of his presence in his mother's home.  It concluded that Special Civil Part Officer Pratt's execution of the warrant of removal and installation of a new lock on the apartment did not terminate defendant's ownership interest in the premises.  The panel explained that when the police entered the apartment defendant still had access to potential legal remedies, such as a stay or order vacating the writ of removal.  The panel reached an issue not raised by the State -- whether exigent circumstances justified the warrantless entry into the apartment -- and concluded that no such circumstances existed.  The panel

13

reversed the conviction on the evidentiary issue alone and did not reach the other issues raised by defendant in his appellate brief.

We granted the State's petition for certification. 212 N.J. 105 (2012). We also granted defendant's cross-petition for certification, which preserves the trial and sentencing issues that defendant raised but the Appellate Division did not decide. 212 N.J. 106 (2012).

### III.

The State argues that no search occurred in this case because defendant had no constitutionally protected reasonable expectation of privacy in an apartment in which he had no legal right to live and from which he had been lawfully evicted. It asserts that in light of the notice to defendant that he was required to vacate the premises and remove his property within seventy-two hours -- a deadline that passed days before the police entry -- defendant had no possessory interest or reasonable expectation that the premises would remain private. The State contends that, in light of the eviction, the lockout of the apartment and the Newark Housing Authority's assumption of full control over the premises, the police officers' entry into the apartment did not offend federal or state constitutional norms. It justifies the seizure of the heroin under the plain view exception to the warrant requirement,

14

arguing that the officers did not conduct a search of the apartment but examined and confiscated evidence of a crime that was plainly visible to them upon their lawful entry.

Defendant counters that his reasonable expectation of privacy in the apartment was unaffected by the pending eviction proceedings or the lockout. He argues that the State exaggerates the impact of the landlord's power to exclude, which he characterizes as only one of several relevant factors. Defendant argues that while remedies to the eviction were still available to him, he retained his reasonable expectation of privacy in the apartment notwithstanding the legal steps taken by the landlord. He contends that no recognized exception to the warrant requirement governs this case.

Amicus curiae American Civil Liberties Union of New Jersey (ACLU) argues that defendant's reasonable expectation of privacy in the apartment survived as long as the courts retained jurisdiction to grant defendant a remedy in the eviction proceedings and the landlord was constrained by statute from removing and disposing of the resident's belongings. ACLU asserts that the legality of defendant's residence in the apartment is irrelevant because he lived there with the permission of the legal tenant, his mother.

IV.

15

The constitutional question under review arises in the context of a public housing agency's[2] summary dispossess proceedings, governed by the Anti-Eviction Act, N.J.S.A. 2A:18-53 to -71, the Tenant Hardship Act, N.J.S.A. 2A:42-10.6 to -10.9, the Fair Eviction Notice Act, N.J.S.A. 2A:42-10.15 to -10.16, and the court rules.

With exceptions that are inapplicable here, the Anti-Eviction Act authorizes the removal of any "lessee or tenant or the assigns . . . from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes." N.J.S.A. 2A:18-61.1.[3] The statute defines grounds for dispossession including, among others, failure "to pay rent due and owing under the lease," N.J.S.A. 2A:18-61.1(a), disorderly conduct that, after notice to cease, "destroy[s] the

---

[2] The Newark Housing Authority "is a public housing agency subject to the United States Housing Act of 1937 . . . and regulations enacted pursuant thereto." Hous. Auth. of Newark v. Raindrop, 287 N.J. Super. 222, 225 (App. Div. 1996).

[3] The complaint in a summary dispossess action based upon nonpayment of rent "must expressly state the owner's identity, the relationship of the plaintiff to the owner, [and] the amount of rent owed as of the date of the complaint," and must include specific provisions for the tenant to pay the outstanding rent prior to trial. R. 6:3-4(c). The complaint must be served with a summons that "shall conform with the requirements of R. 4:4-2." R. 6:2-1. Instead of "directing the defendant to file an answer, the summons shall require the defendant to appear and state a defense at a certain time and place, to be therein specified, which time shall be not less than 10 days in summary dispossess actions . . . nor more than 30 days from the date of service of the summons, and shall notify the defendant that upon failure to do so, judgment by default may be rendered for the relief demanded in the complaint." Ibid.

peace and quiet of the occupants or other tenants," N.J.S.A. 2A:18-61.1(b), and substantial violation or breach of the terms of the lease, N.J.S.A. 2A:18-61.1(e).  Jurisdiction to grant the statutory remedy is contingent upon the existence of one or more of these grounds for eviction.  Hous. Auth. of Morristown v. Little, 135 N.J. 274, 281 (1994) (citing Levine v. Seidel, 128 N.J. Super. 225, 229 (App. Div.), certif. denied, 65 N.J. 570 (1974)).

The statute confers jurisdiction upon the Superior Court, Law Division, Special Civil Part to hear such cases, but they can be tried before a jury upon transfer to the Law Division. N.J.S.A. 2A:18-60, -61; R. 6:1-2(a)(3), :4-1(g).[4]  After the entry of judgment of possession in favor of the landlord, the Anti-Eviction Act and Tenant Hardship Act establish a series of steps that must be taken in accordance with a strict timetable before the landlord can dispossess the tenant.  The first step is the issuance of a warrant of removal to enforce the judgment for possession, issued absent "sufficient cause . . . shown to the contrary when the action comes on for trial."  N.J.S.A. 2A:18-57.  The warrant commands an officer of the court "to remove all persons from the premises, and to put the claimant

_____

[4] When, as in this case, the grounds for the action to dispossess the tenant is nonpayment of rent, the landlord is not required to serve a demand upon the tenant or give notice to the tenant before filing the action.  N.J.S.A. 2A:18-61.2.

17

into full possession thereof." Ibid. The warrant may not be issued "until the expiration of 3 days after the entry of judgment for possession." Ibid. Thus, during this time, the judgment does not yet empower a court officer to dispossess the tenant or authorize the landlord to disturb the tenant's property.

The Fair Eviction Notice Act also prescribes the content of the warrant of removal. The warrant must provide to the tenant: (1) notice of his or her right "to apply to the court for a stay" of the warrant's execution, N.J.S.A. 2A:42-10.16(a); (2) notice of the provision by which the warrant "[s]hall be executed not earlier than the third day following the day of personal service upon the tenant," with weekends and court holidays excluded, N.J.S.A. 2A:42-10.16(b); (3) notice regarding the procedures by which a landlord may remove the tenant's property in accordance with the Abandoned Tenant Property statute, N.J.S.A. 2A:18-72 to -84, N.J.S.A. 2A:42-10.16(e); and (4) notice of the duties of law enforcement officers, N.J.S.A. 2A:42-10.16(e).

The issuance of the warrant of removal triggers a second three-day statutory period, during which the warrant may not be executed. N.J.S.A. 2A:42-10.16(b). At the conclusion of that second three-day period, the court officer may execute the warrant, removing the tenant and any other persons present from

18

the premises.  See ibid.  Once the warrant has been executed and possession of the property is restored to the landlord, the landlord may take action with respect to property left on the premises, in compliance with the notice provisions and other requirements of N.J.S.A. 2A:18-72 to -84.  In the setting here, in which a warrant of removal had been issued for nonpayment of rent, the tenant was on notice during this second three-day period that dispossession, including a lockout with no further notice, may be imminent.

There is yet another significant statutory period.  After the warrant is executed, the Special Civil Part retains jurisdiction to hear an application by the tenant for "lawful relief."  N.J.S.A. 2A:42-10.16.  The Tenant Hardship Act affords discretion to the judge overseeing a summary dispossess action to stay the warrant of removal, should he or she deem such a stay "proper under the circumstances," for no longer than six months after the entry of the judgment of possession.  N.J.S.A. 2A:42-10.6.  That provision "enables courts to grant discretionary relief to tenants facing eviction."  Little, supra, 135 N.J. at 282.  "The Tenant Hardship Act has allowed trial courts, within the limits of the statute, to mitigate the harsh nature of the summary-dispossess procedure by postponing for a limited time the execution of a warrant of removal if the eviction presents a hardship to the tenant."  Ibid.  Such a

19

stay, however, is only available if the tenant pays all outstanding rent and "the accrued costs of the action." N.J.S.A. 2A:42-10.6. The tenant who fails to take timely action has no remedy under that provision. A court may also vacate a judgment pursuant to Rule 4:50-1 if "a grave injustice would occur." Little, supra, 135 N.J. at 289 (expounding that Rule 4:50-1 should be invoked "sparingly, in exceptional situations").

The tenant also has appellate remedies. Pressler & Verniero, Current N.J. Court Rules, comment 2.1 on R. 6:3-4 (2013) ("[I]t is clear that since summary dispossess judgments are now rendered by a constitutional rather than a statutory court, they are fully appealable pursuant to R. 2:2-3(a)(1)."); Little, supra, 135 N.J. at 280; Twp. of Bloomfield v. Rosanna's Figure Salon, Inc., 253 N.J. Super. 551, 558 (App. Div. 1992) (reviewing for reversible error).

Notwithstanding the continued jurisdiction of the Special Civil Part to grant discretionary relief during the ten-day period following the lockout, the tenant's status has fundamentally changed by the time he or she reaches that stage of an eviction. By executing the warrant for dispossession in accordance with N.J.S.A. 2A:42-10.16, the court officer restores control of the premises to the landlord. Thereafter, the landlord may exclude the tenant from the premises except for

20

limited purposes, such as to collect property pursuant to arrangements made with the landlord. See N.J.S.A. 2A:18-57, -74(c). Thus, under the Anti-Eviction Act and the Tenant Hardship Act, the pivotal stage of the proceeding -- when the landlord may assume exclusive control of the premises and exclude the tenant from it -- occurs when the court officer is authorized to execute the warrant following the three-day waiting period prescribed by N.J.S.A. 2A:42-10.16(b).

V.

We review the Appellate Division's determination that on April 13, 2009, defendant had a reasonable expectation of privacy in the apartment where he had lived with his mother and in his property located in that apartment. We conduct that review with substantial deference to the trial court's factual findings, which we "'must uphold . . . so long as those findings are supported by sufficient credible evidence in the record.'" State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Issues of law, in contrast, are reviewed de novo. Id. at 45; State v. Mann, 203 N.J. 328, 337 (2010); State v. Gandhi, 201 N.J. 161, 176 (2010). When, as here, we consider a ruling that applies legal principles to the factual findings of the trial court, we defer to those findings but review de novo the application of those principles to the factual findings. State v. Harris, 181 N.J. 391, 416 (2004).

21

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guard against warrantless searches of the home.  We first determine whether defendant had a reasonable expectation of privacy under the Fourth Amendment.

Under federal law, a court considering an objection to the admission at trial of evidence obtained by a search or seizure must make a threshold determination: whether the challenged search or seizure violated the defendant's reasonable expectation of privacy in the invaded location.  The current constitutional benchmark was articulated in Rakas v. Illinois, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).  There, the defendants contested the search of an automobile, in which they were passengers, which revealed a weapon and ammunition in which the defendants had no property interest.  Id. at 129-30, 99 S. Ct. at 423, 58 L. Ed. 2d at 392.  Affirming the determination of Illinois trial and appellate courts that the defendants lacked standing, the United States Supreme Court rejected the defendants' contention that under Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960),[5] defendants need only establish that they were "'legitimately on

---

[5] While Rakas merely rejected the Jones standing proposition, United States v. Salvucci, 448 U.S. 83, 85, 100 S. Ct. 2547, 2549, 65 L. Ed. 2d 619, 623-24 (1980), explicitly overruled Jones' automatic standing rule.

22

[the] premises'" in order to challenge the legality of a search in a motion to suppress the fruits of that search.  Rakas, supra, 439 U.S. at 129-30, 132-35, 99 S. Ct. at 423, 424-25, 58 L. Ed. 2d at 392, 394-95 (alteration in original).

In Rakas, the Supreme Court dispensed with a separate standing inquiry and adopted the "legitimate expectation of privacy" analysis set forth in Justice Harlan's concurring opinion in Katz v. United States, 389 U.S. 347, 360-61, 88 S. Ct. 507, 516, 19 L. Ed. 2d 576, 587-88 (1967) (Harlan, J., concurring), to determine the extent of a defendant's Fourth Amendment rights.  Rakas, supra, 439 U.S. at 138-39, 143, 99 S. Ct. at 428, 430, 58 L. Ed. 2d at 398, 401.  The Supreme Court concluded that "the better analysis forth-rightly focuses on the extent of a particular defendant's right under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing."  Id. at 139, 99 S. Ct. at 428, 58 L. Ed. 2d at 398.  Under that analysis, the Supreme Court rejected the defendants' claim, holding that they had established no reasonable expectation of privacy in a vehicle in which they were passengers.  Id. at 148-49, 99 S. Ct. at 433, 58 L. Ed. 2d at 404-05.

Rakas was followed by Salvucci, in which the Court confirmed that a defendant has Fourth Amendment protection if he or she has a legitimate expectation of privacy in the place

23

searched, whether or not he or she has a possessory interest in the property seized in the course of the search. Salvucci, supra, 448 U.S. at 91-92, 100 S. Ct. at 2552-53, 65 L. Ed. 2d at 628; cf. Minnesota v. Carter, 525 U.S. 83, 90-91, 119 S. Ct. 469, 473-74, 142 L. Ed. 2d 373, 380-81 (1998) (holding no reasonable expectation of privacy in another's home when purpose of visit was business and defendant thereby could not object to seizure of evidence); United States v. Padilla, 508 U.S. 77, 81-82, 113 S. Ct. 1936, 1938, 123 L. Ed. 2d 635, 640-41 (1993) (explaining that coconspirators and codefendants can only object to admission of seized evidence if their rights were violated by search itself).

As the United States Supreme Court noted in California v. Ciraolo, a two-part inquiry governs the Fourth Amendment analysis:

> The touchstone of Fourth Amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy." [Katz, supra, 389 U.S. at 360, 88 S. Ct. at 516, 19 L. Ed. 2d at 587 (Harlan, J., concurring).] Katz posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?
>
> [California v. Ciraolo, 476 U.S. 207, 211, 106 S. Ct. 1809, 1811, 90 L. Ed. 2d 210, 215 (1986) (citing Smith v. Maryland, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220, 226-27 (1979)); accord United States v.

24

Jones, 565 U.S. __, __, 132 S. Ct. 945, 954-55, 181 L. Ed. 2d 911, 924 (2012) (Sotomayor, J., concurring); Kyllo v. United States, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042-43, 150 L. Ed. 2d 94, 101 (2001).]

If a defendant does not meet his or her burden to demonstrate both prongs of this test, he or she cannot challenge the exclusion of the disputed evidence on Fourth Amendment grounds. Florida v. Riley, 488 U.S. 445, 455, 109 S. Ct. 693, 699, 102 L. Ed. 2d 835, 845 (1989) (O'Connor, J., concurring); Rawlings v. Kentucky, 448 U.S. 98, 104-05, 100 S. Ct. 2556, 2561, 65 L. Ed. 2d 633, 641 (1980); Rakas, supra, 439 U.S. at 130 n.1, 99 S. Ct. at 424 n.1, 58 L. Ed. 2d at 393 n.1. We apply that two-pronged standard here. We consider only the limited information presented at the suppression hearing.

The first inquiry of the federal test -- whether the individual manifested a subjective expectation of privacy in the object of the challenged search -- is addressed only briefly in the record of this case. One of the police officers who testified at the suppression hearing stated that defendant identified the premises as "his" apartment, asking "what's going on" and calling the apartment "my place." The same witness, however, testified that after Special Civil Part Officer Pratt identified himself and advised defendant that the apartment was subject to a warrant of removal and was about to be padlocked,

25

defendant admitted that he had no lease or other document that would identify the apartment as his own.

Assuming defendant satisfies the first prong of the two-pronged federal analysis, he fails to make a showing on its second prong. Under federal law, a tenant's reasonable expectation of privacy can turn on his or her legal status in the wake of an eviction. In United States v. Curlin, 638 F.3d 562, 563 (7th Cir. 2011), the United States Court of Appeals for the Seventh Circuit reviewed a trial court's denial of a suppression motion filed by a defendant who was the subject of an eviction proceeding. There, the defendant's landlord twice attempted to compel the defendant to appear in court to address his failure to pay rent. Ibid. The landlord then obtained an eviction order, which compelled defendant to vacate the premises within three days and authorized an Indiana constable to restore possession of the premises to the landlord. Ibid. After the constable twice left copies of the order at Curlin's residence, he and assisting officers arrived at the residence to execute the eviction order. Ibid. Upon their arrival, they notified the defendant of their purpose and conducted a protective sweep that revealed marijuana and guns in plain view. Id. at 563-64. The Court of Appeals held that in the wake of the eviction proceedings, the defendant had no societally recognized reasonable expectation of privacy:

26

> [T]here is a key distinction in this case --
> Curlin had no lawful right to be in the
> residence he was occupying on December 2,
> 2008. Curlin had been evicted over two
> weeks earlier following an action in Indiana
> court, and had been given notice of his
> eviction when officers twice left copies of
> the eviction order at the residence. Like a
> "burglar plying his trade in a summer cabin
> during the off season," Curlin's presence
> was "wrongful," and consequently any
> subjective expectation of privacy he may
> have had is not "one that society is
> prepared to recognize as 'reasonable.'"
> Because Curlin had no legitimate expectation
> of privacy in the residence, no Fourth
> Amendment search occurred.
>
> [Id. at 565 (quoting Rakas, supra, 439 U.S.
> at 143 n.12, 99 S. Ct. at 430 n.12, 58 L.
> Ed. 2d at 401 n.12).]

The Seventh Circuit's sound reasoning in Curlin is equally applicable to this case. When defendant departed from the apartment on April 13, 2009, he was on notice that a court officer could enter the apartment, restore control to the landlord and authorize a change of the locks that would deprive defendant of unsupervised access to the apartment. If defendant ever had a societally recognized reasonable expectation of privacy in the apartment when his mother was the tenant of the apartment, any such expectation terminated at this late stage of the eviction. Given that defendant was served with notice that the landlord's eviction action had progressed to the point of an imminent lockout, defendant did not have a societally recognized

27

expectation of privacy at the relevant time.[6]  Accordingly, under

federal law, defendant had no reasonable expectation of privacy

to contest the admission of the evidence in dispute.

VI.

Like the Fourth Amendment, Article I, Paragraph 7 of our

State Constitution generally protects individuals from

warrantless searches of the home.  Under state law, a "defendant

---

[6] We do not reach the issue of whether defendant previously held the status of a guest in the apartment leased to his mother before the landlord instituted eviction proceedings or whether such a status gave rise to a reasonable expectation of privacy in the apartment in these circumstances.  Under federal law, an individual with no ownership or leasehold interest in a home may, in some settings, have a reasonable expectation of privacy in the premises, by virtue of his or her status as a guest of the lawful owner or renter.  See Minnesota v. Olson, 495 U.S. 91, 99, 110 S. Ct. 1684, 1689, 109 L. Ed. 2d 85, 95 (1990) (holding overnight guests are "entitled to legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household"); contra Carter, supra, 525 U.S. at 90-91, 119 S. Ct. at 473-74, 142 L. Ed. 2d at 380-81 (holding no reasonable expectation of privacy in another's home when purpose of visit was business and thereby could not object to seizure of evidence).  Similarly, a hotel guest may have a reasonable expectation of privacy in a rental room until his or her guest status has been terminated.  See United States v. Young, 573 F.3d 711, 716, 720-21 (9th Cir. 2009) (holding hotel guest retained reasonable expectation of privacy in hotel room and property in room because he was not properly evicted from room and hotel staff did not inform him he was being evicted); United States v. Bautista, 362 F.3d 584, 590 (9th Cir. 2004) (concluding guest retains reasonable expectation of privacy in hotel room unless occupancy has been lawfully terminated).  Whether defendant was a "guest" for Fourth Amendment purposes when he lived with his mother in the apartment is irrelevant because defendant no longer enjoyed that status as of April 13, 2009, by virtue of the eviction proceedings in this case.

28

must show that a reasonable or legitimate expectation of privacy was trammeled by government authorities." State v. Evers, 175 N.J. 355, 368-69 (2003); see also State v. Reid, 194 N.J. 386, 396, 401 (2008) (finding reasonable expectation of privacy in internet subscriber information); State v. Hempele, 120 N.J. 182, 200, 206 (1990) (finding reasonable expectation of privacy in curbside garbage).

Under state as well as federal constitutional norms, "[a] warrantless search of a person's home 'must be subjected to particularly careful scrutiny,' because 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is direct[ed].'" State v. Cassidy, 179 N.J. 150, 160 (2004) (second alternation in original) (quoting State v. Bolte, 115 N.J. 579, 583, cert. denied, 493 U.S. 936, 110 S. Ct. 330, 107 L. Ed. 2d 320 (1989); State v. Hutchins, 116 N.J. 457, 463 (1989)); accord Groh v. Ramirez, 540 U.S. 551, 559, 124 S. Ct. 1284, 1290, 157 L. Ed. 2d 1068, 1079 (2004); Kyllo, supra, 533 U.S. at 31, 121 S. Ct. at 2041-42, 150 L. Ed. 2d at 100; State v. Vargas, 213 N.J. 301, 312-13 (2013); State v. Edmonds, 211 N.J. 117, 129 (2012).

In addressing a defendant's reasonable expectation of privacy in a place searched, however, New Jersey jurisprudence

diverges from federal law in significant respects.[7] Unlike federal law, New Jersey law confers automatic standing on a defendant "in cases where the defendant is charged with an offense in which possession of the seized evidence at the time of the contested search is an essential element of guilt." State v. Alston, 88 N.J. 211, 228 (1981). In settings such as this, where the defendant seeks to exclude evidence offered by the State in his or her trial for a possessory offense, the defendant's standing to assert his or her rights under Article I, Paragraph 7 of the New Jersey Constitution is beyond dispute. Even when a defendant has automatic standing, if, as here, the merits rest on whether defendant possesses a reasonable expectation of privacy, the court must address that issue as part of the substantive constitutional analysis. That inquiry is separate and distinct from the question of standing. See, e.g., State v. Harris, 211 N.J. 566, 589-90 (2012) (considering and rejecting defendant's argument that he had reasonable expectation of privacy in firearm serial numbers entered by officers into National Crime Information Center database); State v. Stott, 171 N.J. 343, 355, 357-58 (2002) (determining

---

[7] The federal and state constitutional protections are not in every respect coextensive; this Court has interpreted Article I, Paragraph 7 of our State Constitution to provide protections beyond those afforded by the Fourth Amendment. See, e.g., Hempele, supra, 120 N.J. at 195; State v. Mollica, 114 N.J. 329, 344 (1989).

involuntary patient at hospital had reasonable expectation of privacy in his shared room); Hempele, supra, 120 N.J. at 200, 215 (finding persons have reasonable expectation of privacy in contents of opaque trash bags left at curb for collection); State v. Harris, 298 N.J. Super. 478, 484-85 (App. Div.) (holding defendant who forcefully intruded into another's apartment had no reasonable privacy interest in premises as recognized by general societal norms), certif. denied, 151 N.J. 74 (1997).

As this Court has noted, "[a]lthough we do not use a reasonable expectation of privacy analysis for standing purposes in criminal cases, we do apply that analysis to determine whether a person has a substantive right of privacy in a place searched or an item seized." State v. Johnson, 193 N.J. 528, 547 (2008) (citing State v. McAllister, 184 N.J. 17, 32-33, 36 (2005); Hempele, supra, 120 N.J. at 198-200)). While defendant has automatic standing under Alston to seek suppression, in this case we must nonetheless determine whether he had a reasonable expectation of privacy in the premises -- as a substantive matter of law – as part of the inquiry as to whether an unlawful search occurred. Johnson, supra, 193 N.J. at 547.

Advancing an argument not made by defendant or the ACLU, our dissenting colleague asserts that our holding contravenes Alston and Johnson, by imposing what he characterizes as "an

31

extra layer of standing – a reasonable expectation of privacy analysis" – upon this Court's jurisprudence. Post at ____ (slip op. at 4-7). Our colleague's contention is unfounded. We apply the standing rule of Alston, in which the Court confirmed that a defendant has automatic standing to object to the admission of seized evidence if he or she is charged with an offense in which possession of that evidence is an essential element. 88 N.J. at 228. As the Court noted in Johnson, a defendant has automatic standing under Alston and its progeny -- and may accordingly seek suppression of evidence -- by virtue of the charge that he or she possessed the item seized, whether or not the defendant has a reasonable expectation of privacy in the area searched. Johnson, supra, 193 N.J. at 545 (citations omitted).

A defendant's automatic standing to file a motion to suppress, however, does not equate to a finding that he or she has a substantive right of privacy in the place searched that mandates the grant of that motion. Id. at 547, citing McAllister, supra, 184 N.J. at 32-33, 36; Hempele, supra, 120 N.J. at 198-200. Defendant's standing to seek suppression of evidence in the trial of a possessory offense, and the existence of a reasonable expectation of privacy -- relevant not to standing but to the merits of the suppression motion -- are

separate issues.[8]  Here, we recognize defendant's automatic

standing under Alston to seek suppression of the heroin and

currency seized by police officers.  We determine, however, that

he lacked "a substantive right of privacy in [the] place

searched" within the meaning of Johnson, supra, 193 N.J. at 547.

This is not a typical case in which a defendant seeks

suppression of items found in his or her home.  Instead, this

novel case arises in unusual circumstances, in which we consider

the reasonable expectation of privacy in the setting of an

eviction that has proceeded to an advanced stage.  Our holding

thus comports with the jurisprudence cited by the dissent, which

overstates the reach of our prior case law.

Unlike the federal test, the New Jersey constitutional

standard does not require the defendant to prove a subjective

expectation of privacy.  In Hempele, supra, 120 N.J. at 198-99,

this Court rejected the federal two-pronged analysis because it

"entails an arbitrary distinction between facts that manifest a

---

[8] The distinction between the standing and substantive inquiries is illustrated by a defendant who claims he did not consent to a search that resulted in firearms charges, and who files a motion to suppress on that ground.  Under Alston, by virtue of the possessory offense charged, such a defendant has automatic standing to proceed and challenge the search.  Alston, 88 N.J. at 228.  The defendant's standing, however, does not resolve the substantive issue to be decided by the court in the suppression hearing -- whether the State has demonstrated the defendant's consent to the search.  To prevail on the merits if the State has satisfied its burden, a defendant with automatic standing must still address the substantive inquiry -- whether he knowingly and voluntarily consented to a search.

33

subjective privacy expectation and those that indicate the reasonableness of the privacy expectation." Instead, Article I, Paragraph 7 of the New Jersey Constitution "requires only that an expectation of privacy be reasonable." Id. at 200. This streamlined inquiry governs suppression motions premised upon Article I, Paragraph 7 of our State Constitution.

This Court and the Appellate Division have recognized circumstances in which no reasonable expectation of privacy can be found, notwithstanding the residential setting of the police activity. See, e.g., State v. Johnson, 171 N.J. 192, 209-10 (2002) (finding defendant had no reasonable expectation of privacy when officers observed contraband on porch of multi-family home used by other occupants and visitors); N.J. Dep't of Envtl. Prot. V. Huber, 213 N.J. 338, 370 (2013) (holding private land owners cannot claim full expectation of privacy in lands subject to recorded deed restrictions); State v. Anglada, 144 N.J. Super. 358, 360-61, 363 (App. Div. 1976) (holding defendant had no reasonable expectation of privacy when investigators were invited into home and observed evidence of marijuana).

In other settings, our courts have found that a defendant does not have a reasonable expectation of privacy in a property that he or she occupies unlawfully. In State v. Perry, 124 N.J. 128, 133, 149 (1991), the Court considered the defendant's challenge to the admission of drugs and paraphernalia seized in

34

an apparently abandoned building that the defendant had entered to inject himself with drugs. In addition to citing the officers' "unrelated, legitimate purpose" that brought them to view the contraband, the Court determined that defendant's "expectation of privacy was not impinged," observing:

> [Defendant] was in a house, not his own, that appeared vacant and whose front door was not only unlocked but open. The open door, uncertain ownership, and vacant nature of the edifice create a situation far from unambiguous and make it difficult to give its transient user a constitutionally-reasonable expectation of privacy. Moreover, the evidence shows that defendant's own subjective expectations were not thwarted by the officers' entrance. He "expected" their arrival, wished to continue cooperating with them in the murder investigation, and did not object to them ascending the stairs once they entered and he saw them.
>
> [Id. at 149-50 (citing Katz, supra, 389 U.S. at 361, 88 S. Ct. at 516, 19 L. Ed. 2d at 588 (Harlan, J., concurring)).]

The Appellate Division reached the same conclusion in State v. Linton, 356 N.J. Super. 255, 258-59 (App. Div. 2002). There, the defendant concealed drugs on the first and second floors of an "abandoned building in which [he] had no legal interest," and police entered the property without a warrant and seized them. Id. at 256. The Appellate Division reversed the trial court's grant of a motion to suppress the evidence found on the first floor. Ibid. The panel relied on Perry. Id. at 258. It

35

explained that "the building was abandoned and defendant, at best a transient squatter, had no constitutionally-reasonable expectation of privacy." Id. at 256.

The setting of this case is distinguishable from that of Perry and Linton. Here, defendant did not occupy a stranger's abandoned premises but lived in his mother's apartment while an eviction proceeding was pending. The courts deciding Perry and Linton, however, articulated a principle that is relevant to this case: that the objective reasonableness of the defendant's expectation of privacy in that property, for purposes of Article I, Paragraph 7, turns in large part on his or her legal right to occupy the property at issue.

The significance of the defendant's legal status with respect to a residence was underscored in State v. Mark, 46 N.J. 262, 264-65 (1966), in which this Court addressed a search by police officers in a room subject to a week-to-week tenancy that the defendant had not renewed. On the day that the defendant was moving out, while his belongings remained in the room but his key had been turned in, police searched his room to investigate the murder of another tenant and, after obtaining a warrant, seized items belonging to the defendant. Id. at 265-66, 268. The Court did not expressly address the issue of whether the defendant in Mark had a reasonable expectation of

36

privacy in his former home.[9]  In determining the propriety of the police entry into the defendant's room, however, the Court considered that "when the search began on January 18, the tenancy of the defendant had already expired and the landlord had acquiesced in and approved the conduct of the officers." Id. at 274-75.  Given the late stage of eviction process, the Court in Mark held that the police conduct did not constitute an unreasonable search.  Id. at 275-76.

Here, we consider defendant's legal interest in the apartment in determining, under State constitutional principles, whether he had an objectively reasonable expectation of privacy on the relevant date.  The three-day period between notice of the warrant of removal and execution of the warrant afforded the tenant an opportunity to vacate the premises.  That three-day period expired on April 10, 2009.  Thus, as of April 13, 2009, defendant had been on notice for a week that an eviction proceeding was pending and that it had reached a pivotal stage. Defendant was advised in the warrant of removal that while the apartment's "tenant" remained in "legal possession" during the

---

[9] Mark was decided before Katz and Ciraolo's adoption of the two-part test for a reasonable expectation of privacy for Fourth Amendment purposes and before this Court stated the New Jersey constitutional standard in Hempele.  In Mark, this Court did not evaluate the facts before it in accordance with the analysis that we apply to this case but focused instead upon the reasonableness of the police conduct in light of the "particular facts presented."  Mark, supra, 46 N.J. at 275.

three-day notice period -- preventing the landlord from conducting a lockout -- this status would change at the end of the three days.  The remedial action identified in the warrant of removal -- court intervention -- was neither sought nor obtained during the critical three-day period.  If defendant somehow expected that his privacy in the apartment would be preserved at this late stage of the eviction, that expectation was unreasonable.[10]  Moreover, the potential for defendant to obtain a court remedy during the ten-day period following the execution of the warrant of removal and to seek appellate review does not give rise to a reasonable expectation of privacy considering the landlord's ability to enter and remove defendant's possessions during that time.  See N.J.S.A. 2A:18-72 to -84.

We hold, based upon the evidence adduced in the suppression hearing, that on the afternoon of April 13, 2009, defendant lacked an objectively reasonable expectation of privacy in the apartment where he had been living.  Accordingly, the April 13, 2009 police action in his apartment was not a "search" for purposes of either the Fourth Amendment of the United States

---

[10] In Maglies v. Estate of Guy, 193 N.J. 108, 126 (2007), this Court articulated a standard for determining whether an individual who was not the documented tenant could qualify as a functional co-tenant for purposes of search and seizure analysis.  We need not apply that standard to defendant here. Even if defendant was a functional co-tenant under Maglies, any such status terminated at the end of the three-day period.

Constitution or Article I, Paragraph 7 of the New Jersey Constitution.  We reverse the Appellate Division's determination with respect to this issue.

VII.

Our holding that the police action did not constitute a search does not entirely resolve the question of whether the trial court properly denied defendant's motion to suppress.  In addition to contending that the police officers conducted an unlawful search of his apartment, defendant challenged the officers' seizure of the disputed evidence in his motion before the trial court.  On appeal, the constitutionality of the seizure was not addressed in detail by the parties or amicus.  The Appellate Division did not separately address that issue.  Neither this Court nor the Appellate Division has squarely addressed the standard by which a trial court should determine the constitutionality of a seizure of property that is discovered in a residence when no Fourth Amendment or Article I, Paragraph 7 search occurs.

We therefore remand this matter to the Appellate Division for a determination, after supplemental briefing by the parties and amicus, of the constitutionality of the police officers' seizure of the evidence that was the subject of defendant's motion to suppress.  On remand, the Appellate Division should also consider the issues that it did not reach because of its

39

reversal of the trial court's denial of defendant's motion to suppress.

VIII.

The judgment of the Appellate Division is reversed and the matter is remanded in accordance with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA and HOENS join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN filed a separate, dissenting opinion, in which JUDGE RODRÍGUEZ (temporarily assigned) joins. JUDGE CUFF (temporarily assigned) did not participate.

STATE OF NEW JERSEY,

    Plaintiff-Appellant
    and Cross-Respondent,

       v.

GENE HINTON,

    Defendant-Respondent
    and Cross-Appellant.

    JUSTICE ALBIN, dissenting.

Today's decision weakens more than three decades of this Court's standing jurisprudence under Article 1, Paragraph 7 of the New Jersey Constitution. Before today, if a person had a possessory, proprietary, or participatory interest in a place called home, that person had standing to object to an unlawful search of the premises and that person's reasonable expectation of privacy would not be an issue. Now, in disregard of the precise dictates of this Court's decisions in State v. Alston, 88 N.J. 211, 227 (1981) and State v. Johnson, 193 N.J. 528, 546 (2008), and our general standing jurisprudence, the majority insists that even when a defendant has standing to object to a search of his home, the court must determine whether he had a reasonable expectation of privacy in the premises. See slip op. at 30.

1

In Alston, supra, and Johnson, supra, we rejected the notion that a defendant with standing to object to a search under state law must clear "another layer of standing" based in federal jurisprudence -- that is, have a court find that he had a reasonable expectation of privacy. Johnson, supra, 193 N.J. at 546. The majority does here exactly what we said we would not do in Alston and Johnson. For the first time, this Court finds that a defendant has standing -- a possessory or proprietary interest in the place searched -- only to declare that the defendant has no reasonable expectation of privacy in the place searched. Not only does this formulation contravene our case law, but it could confound practitioners and judges if expanded beyond the novel scenario in this case. Because this departure from our law is unwarranted, I respectfully dissent.

I.

Defendant Gene Hinton lived at 130 Dayton Street, Apartment 8K, in Newark for six years before the police searched his apartment on April 13, 2009. Hinton's mother, Essie, who died on March 14, 2009, was the leaseholder of the apartment. Although Essie's name was the only one on the lease, it seems that both the building superintendent and the building manager knew that Hinton resided with his mother. Arguably, the New Jersey Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12,

2

provided Hinton with a basis to remain on the premises, even after his mother's death.  See Maglies v. Estate of Guy, 193 N.J. 108, 112 (2007) (prohibiting "the causeless eviction of a daughter, after the death of her mother, where the landlord consented to the daughter's residence and where the daughter's income factored into the family contribution and federal voucher subsidy paid to the landlord").

Apparently unaware of Essie's death, the landlord, the Newark Housing Authority, initiated an eviction action for nonpayment of rent.  On March 31, 2009, a Superior Court judge issued a warrant directing a Special Civil Part Officer to remove the tenant -- Essie -- and her property from the premises.  On April 6, the Special Civil Part Officer placed the warrant of removal under the door of the apartment.  The warrant gave "Ms. Hinton" 72 hours to vacate the apartment or seek judicial relief.

Under the New Jersey Anti-Eviction Act, the "Special Civil Part shall retain jurisdiction for a period of 10 days subsequent to the actual execution of the warrant for possession for the purpose of hearing applications by the tenant for lawful relief."  N.J.S.A. 2A:42-10.16(e).  Here, the Special Civil Part Officer executed the removal on April 13 when he took account of the property in the apartment and changed the lock on the door.

3

Hinton had ten days from that point to seek judicial relief from the lockout.

As he was conducting the lockout, the Special Civil Part Officer observed what he believed to be illegal drugs in a bedroom.  He properly reported his observations to the Newark Police Department.  No one disputes that those observations provided probable cause to conduct a search.  The only question is whether Hinton has the right to challenge the warrantless entry of the apartment by Newark police officers.

The majority concedes that Hinton has standing to challenge the search -- that is, he has a possessory, proprietary, or participatory interest in the apartment.  Nevertheless, the majority contends that Hinton did not have a reasonable expectation of privacy in the premises.  The majority imposes an extra layer of standing -- a reasonable expectation of privacy analysis -- when we have instructed courts not to do so.  That is clear from the seminal case guiding our standing jurisprudence, State v. Alston, supra, to which I now turn.

II.

A.

In State v. Alston, the Court articulated the governing principles for standing in cases in which a defendant claims a search or seizure violates Article 1, paragraph 7 of the New

4

Jersey State Constitution. In doing so, this Court parted with the United States Supreme Court's newly minted standing jurisprudence in Rakas v. Illinois, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), and United States v. Salvucci, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980), jurisprudence which requires a person to have a reasonable expectation of privacy in the place searched or the thing seized to make a challenge under the Fourth Amendment. See Alston, supra, 88 N.J. at 226. In Alston, we specifically rejected "the amorphous 'legitimate expectations of privacy in the area searched' standard as applied in Rakas, Salvucci and Rawlings,"[1] and "retain[ed] the rule of standing traditionally applied in New Jersey, namely, that a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized." Id. at 228. The Court came to this conclusion because this rule of standing is "more consonant with our own interpretation of the plain meaning of Article 1, paragraph 7 of our State Constitution." Id. at 227.

"Following Alston, our courts have consistently applied the automatic standing rule to defendants charged with possessory

---

[1] Alston, supra, uses the terms "reasonable" and "legitimate" expectation of privacy interchangeably. See, e.g., 88 N.J. at 218.

5

offenses, <u>regardless of whether they had an expectation of privacy in the area searched.</u>"  <u>Johnson</u>, <u>supra</u>, 193 <u>N.J.</u> at 545 (emphasis added).  In <u>Johnson</u>, we gave examples, such as <u>State v. Miller</u>, 342 <u>N.J. Super.</u> 474, 478 (App. Div. 2001), in which the defendant had standing to challenge the search of a home where he was visiting but where he did not reside, and <u>State v. De La Paz</u>, 337 <u>N.J. Super.</u> 181, 193-95 (App. Div.), <u>certif. denied</u>, 168 <u>N.J.</u> 295 (2001), in which the defendant had standing to challenge the warrantless entry of a home where he was a guest.  <u>Johnson</u>, <u>supra</u>, 193 <u>N.J.</u> at 545.

In <u>Johnson</u>, the State argued, as it does here, that "without having a reasonable expectation of privacy in the thing searched or item seized, defendant cannot make out a[n] . . . Article I, Paragraph 7 violation."  <u>Id.</u> at 546.  We rejected that argument.  <u>Ibid.</u>  We refused to "place[] another layer of standing -- ['a reasonable expectation of privacy' analysis] -- on top of our automatic standing rule."  <u>Ibid.</u>  We made crystal clear that "we do not use a reasonable expectation of privacy analysis for standing purposes in criminal cases" -- with one caveat.  <u>Id.</u> at 547.  We recognized in <u>Johnson</u> that in novel cases we would have to "determine whether an individual possesses a substantive right of privacy in a <u>class</u> of objects or a <u>general</u> place."  <u>Ibid.</u> (emphasis added).  For example, by determining that people have a reasonable expectation of privacy

6

in their bank records, see State v. McAllister, 184 N.J. 17, 32-33 (2005), we signaled that our standing jurisprudence will apply to those records. However, there is nothing novel about the constitutional protections afforded to the home. "[T]raditional notions of standing" apply to the home, and therefore the question here is whether Hinton had a possessory, proprietary, or participatory interest in the apartment searched. See Johnson, supra, 193 N.J. at 547.

## B.

The majority is mistaken in suggesting that, because Hinton is charged with a possessory offense, only principles of automatic standing apply in this case. Hinton had the right to assert that he had general standing to object to the search of his apartment. See generally 32 New Jersey Practice, Criminal Practrice and Procedure § 16:33 (Leonard N. Arnold) (2011). At the motion to suppress hearing, no one questioned whether Hinton had standing to challenge the search. No one questioned whether he had a reasonable expectation of privacy in the premises. The trial court apparently accepted that Hinton had standing and determined that the Newark police officers had a constitutional basis to conduct a warrantless search of the apartment. This Court has never before found that a defendant had standing to object to the search of a place and then turned to whether that

7

defendant had a reasonable expectation of privacy in the place searched.

The majority refers to cases of a "transient user" and a "transient squatter" in abandoned buildings, slip op. at 35-36,-- cases in no way comparable to the present one in which a son lived with his mother in an apartment for six years with the almost certain knowledge of the building superintendent. Perhaps more significantly, the majority ignores that this Court recently said that "in a challenge to a search or seizure," the "'reasonable expectation of privacy' standard" is not the standard when determining "whether property is abandoned." Johnson, supra, 193 N.J. at 549 n.5.

In overruling the Appellate Division and denying Hinton's motion to suppress, the majority discards core principles that guide our automatic standing jurisprudence. The majority has forgotten that "[o]ur possessory, proprietary and participatory standing analysis not only incorporates the notion of a reasonable expectation of privacy, but also advances other important state interests." Ibid. One of those interests is that "by allowing a defendant broader standing to challenge evidence derived from unreasonable searches and seizures under our State Constitution, we increase the privacy rights of all New Jersey's citizens and encourage law enforcement officials to

8

honor fundamental constitutional principles." Ibid. (citing Alston, supra, 88 N.J. at 226 n.8).

These juridical principles are overlooked in the majority opinion.

III.

The police officers in this case searched an apartment without a warrant and without ever seeking the consent of the owner or leaseholder of that dwelling. They did not even seek out an agent of the Newark Housing Authority for authorization to breach the threshold of Hinton's home. No one suggests that the officers had exigent circumstances to justify the warrantless search in this case. The real question is whether Hinton had a possessory, proprietary, or participatory interest in the apartment -- and in the property of that apartment -- that allows him to challenge the search. He was not a transient guest or visitor but a resident of the apartment for six years, and he was charged with a possessory offense, which ordinarily triggers automatic standing. See Alston, supra, 88 N.J. at 228. Even after the Special Civil Part Officer executed the warrant of removal and changed the locks on the apartment, for a period of ten days, Hinton had a statutory right to seek judicial relief. N.J.S.A. 2A:42-10.16(e). Hinton therefore retained a possessory or proprietary interest, and even a reasonable

9

expectation of privacy, in his home.  Whether under our traditional standing principles or under the ones now created by the majority, Hinton had a right to challenge the search in this case.

IV.

In weakening the standing jurisprudence for searches and seizures under Article 1, Paragraph 7 of our State Constitution in the case of Gene Hinton, the majority takes a step toward eroding "the privacy rights of all New Jersey's citizens" and forgoes sending a signal to "encourage law enforcement officials to honor fundamental constitutional principles."  Johnson, supra, 193 N.J. at 543.  Although the majority's misreading of our standing jurisprudence could sow confusion in the ranks of our trial courts, there is hope that the damage done here will be limited to the "unusual" facts of this case, which the majority characterizes as "novel."  Slip op. at 33.

For the reasons expressed, I respectfully dissent.

JUDGE RODRÍGUEZ (temporarily assigned) joins in this opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-3/4                              SEPTEMBER TERM 2012

ON CERTIFICATION TO        Appellate Division, Superior Court

STATE OF NEW JERSEY,

      Plaintiff-Appellant
      and Cross-Respondent,

           v.

GENE HINTON,

      Defendant-Respondent
      and Cross-Appellant.


DECIDED              October 24, 2013
                 Chief Justice Rabner              PRESIDING
OPINION BY          Justice Patterson
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY            Justice Albin


| CHECKLIST | REVERSE AND REMAND | AFFIRM |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | | X |
| JUSTICE HOENS | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | | X |
| JUDGE CUFF (t/a) | ------------------------ | -------------------- |
| TOTALS | 4 | 2 |

1