812 A.2d 382 (2002)
356 N.J. Super. 255
STATE of New Jersey, Plaintiff-Appellant/Cross-Respondent,
v.
Linford LINTON, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 10, 2002.
Decided December 30, 2002.
*383 Theodore J. Romankow, Union County Prosecutor, for appellant/cross-respondent (Steven J. Kaflowitz, Assistant Prosecutor, of counsel and on the brief).
Yvonne Smith Segars, Public Defender, for respondent/cross-appellant (Cecelia Urban, Assistant Deputy Public Defender, of counsel and on the brief).
Before Judges STERN, COBURN and ALLEY.
The opinion of the court was delivered by COBURN, J.A.D.
By leave granted, the State appeals and defendant cross-appeals from a pretrial order granting in part and denying in part defendant's motion to suppress controlled dangerous substances and money. The incident occurred in an abandoned building in which defendant had no legal interest, and involved two seizures: narcotics found hidden in a couch on the first floor, and narcotics that the police observed the defendant discard when they confronted him on the second floor. The money was found on defendant's person after he had been arrested and brought to the police station. The judge granted defendant's motion as to the evidence found on the first floor and denied it as to the evidence found on the second floor and at the police station. We reverse the ruling on the first floor evidence because the building was abandoned and defendant, at best a transient squatter, had no constitutionally-reasonable expectation of privacy. We affirm the ruling with respect to the second floor evidence and money because the police had probable cause to arrest defendant, who discarded the evidence when approached.
Neither side disputes the judge's findings of fact, which reveal the following story. On August 6, 2001, around midnight, two uniformed Plainfield police officers were patrolling Monroe Avenue in an area plagued by high narcotics activity. From their marked police car, they noticed a vehicle circling the 300 block, while its occupants attempted to get the attention of pedestrians. The vehicle stopped at Monroe Avenue and West Third Street, and an unidentified male approached the driver's door. When the officers approached in their car, the unidentified male, who seemed to be startled, walked away, and the vehicle drove off. Shortly thereafter, the officers saw the same vehicle stopped, with its lights off and engine running, in front of 215 Monroe Avenue. As the officers drove up, the vehicle's lights came on and it quickly drove away. Based on their training and experience, which was extensive, the officers believed the vehicle's occupants were trying to purchase drugs. The officers pursued and stopped the vehicle. Its occupants admitted they were trying to buy drugs, and they added that a man had approached them from the porch of 215 Monroe Avenue and had shown them drugs. When they changed their minds, the man returned to that building and went inside.
The property at 215 Monroe Avenue, apparently a single-family house, had all the indicia of abandonment. The front and back yards were filled with refuse, including mattresses, tires, and beer bottles. Although the front door was closed, its lock was broken and its knob was hanging down. A front window was broken out. From the area of the broken window, the officers could see garbage throughout the living room and furniture that was torn up *384 and thrown around. No lights were on. Despite frequents patrols in this area, no one had been seen at the house during the past month.
The officers went in and searched the living room on the first floor, finding a brick of cocaine, some marijuana, and a key, all hidden together in a torn and dirty couch. When the officers moved to the second floor, they found defendant near a closet, the door to which was lying on the floor against the wall. Defendant, who lived elsewhere, placed a small object behind the door and stepped away. The officers retrieved the discarded item, a sandwich bag containing a controlled dangerous substance, and arrested defendant. At the police station, a further search of defendant revealed the presence of $295.
Although the police looked for narcotics on the first floor of this abandoned house, that does not mean that their activity constituted a "search" under the Fourth Amendment of the United States Constitution. A search, in that sense, only "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94 (1984). Thus, even assuming that defendant had a subjective expectation of privacy when he secreted his drugs in the couch of this house, which its owners had abandoned, the question remains whether that expectation is constitutionally reasonable.
Our Supreme Court addressed this subject in State v. Perry, 124 N.J. 128, 590 A.2d 624 (1991), which involved a seizure of evidence from a defendant who was found in someone else's vacant house:
[O]ther reasoning demonstrates that Perry's expectation of privacy was not impinged. He was in a house, not his own, that appeared vacant and whose front door was not only unlocked but open. The open door, uncertain ownership, and vacant nature of the edifice created a situation far from unambiguous and make it difficult to give its transient user a constitutionally-reasonable expectation of privacy.
[Id. at 149-50, 590 A.2d 624.]
The judge viewed Perry as distinguishable because after the police entered the vacant building, defendant volunteered that he had drugs and handed the officers a syringe and drug spoon, at which point they noted the presence of drugs in plain view on a bureau. Id. at 149, 590 A.2d 624. But, we are satisfied that this basis for upholding the seizure in no way undercuts the thrust of the entirely alternative ground quoted above.[1]
There are Fourth Amendment cases outside this jurisdiction bearing on the issue at hand. In Amezquita v. Hernandez-Colon, 518 F.2d 8, 10-12 (1st Cir.1975), cert. denied, 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976), the court held that squatters had no reasonable expectation of privacy where they had no legal right to occupy the land and build structures on it. In Zimmerman v. Bishop Estate, 25 F.3d 784, 787 (9th Cir.), cert. denied, 513 U.S. 1043, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994), the court held that a squatter in a residential home did not have an objectively reasonable expectation of privacy because he *385 had no legal right to occupy the home. In United States v. Sandoval, 200 F.3d 659 (9th Cir.2000), the court reiterated that principle, noting that "[a] private residence is easily identifiable and clearly off-limits...." Id. at 661.
Given those authorities and the guidance provided by Perry, we hold that a defendant who hides drugs in someone else's vacant property has no constitutionally-reasonable expectation of privacy. Therefore, the first floor seizure did not violate the Fourth Amendment.[2]
Affirmed in part; reversed in part; and remanded for trial.
NOTES
[1] The State relies on two additional cases, State v. List, 270 N.J.Super. 252, 636 A.2d 1097 (Law Div.1990), aff'd 270 N.J.Super. 169, 636 A.2d 1054 (App.Div.1993); and State v. Vader, 114 N.J.Super. 260, 276 A.2d 151 (App.Div.1971). But those cases concern the rights, or lack thereof, of owners of abandoned property subjected to police search, rather than a squatter in vacant property, which is the case here. Thus, they do not advance the State's cause.
[2] Defendant's arguments on his cross-appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).