Justice PATTERSON,
dissenting.
The narcotics investigation that led to defendants’ indictment focused upon two houses on the same street: a house located at 815 Line Street in Camden, and the house at the center of this appeal, located at 820 Line Street. The house at 815 Line Street was described by police officers as a brick-faced row home, painted red with windows trimmed in white, with a steel front door, a wrought iron hand rail and an air conditioner installed in a front window. Based upon their observations, the officers reasonably concluded that the house served as a residence. They properly obtained a warrant to enter and search the home.
*543 The officers’ starkly different observations at 820 Line Street led them to the opposite conclusion. The house at 820 Line Street was not secured by any device that could be operated by a person located inside the house, but by a padlock installed on the outside of the front door, locked and unlocked by a key that was later found in the possession of defendant Kareem Strong. The screen door on the front of the house was missing its screen. 820 Line Street lacked a functioning rear entrance; the back door was off its hinges and propped up by an object located within the house. At least one of the front windows was broken and missing its glass pane. The electric meter had been removed from the meter box. Through broken windows, police officers observed “trash all over the place” inside the house. The officers concluded that 820 Line Street was unoccupied and abandoned, and instead of adding that house to their application for a warrant, they conducted a warrant-less search. That search revealed holes in the walls, human feces on the floor, garbage strewn about the rooms, a sawed-off bolt action rifle hidden beneath a floor register, narcotics and paraphernalia.
Contrary to the suggestion of the majority, the police officers who conducted this investigation did not ride roughshod over the constitutional rights of the residents of a poor neighborhood. Instead, the officers’ contrasting observations at the two neighboring homes led them to the conclusion that while 815 Line Street was someone’s residence, 820 Line Street was not a home at all, but rather an empty and abandoned house. The officers conducted a careful investigation and arrived at a conclusion that was firmly grounded in their observations.
Reasonableness is the pivotal inquiry under both the Fourth Amendment and our State constitutional provision regarding search and seizure, N.J. Const. Art. I, Par. 7. State v. Novembrino, 105 N.J. 95, 182, 185, 519 A.2d 820 (1987) (citing State v. Bruzzese, 94 N.J. 210, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984)). Applying that governing standard, I would reverse the determination of the *544 Appellate Division, and uphold the constitutionality of the officers’ search of 820 Line Street. Accordingly, I respectfully dissent.
I.
As the majority notes, the factual findings of the trial court are afforded deference on appellate review. Those findings must be upheld “so long as [they] are supported by sufficient credible evidence in the record.” State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007) (internal quotation marks and citation omitted); see also State v. Handy, 206 N.J. 39, 44,18 A.3d 179 (2011); State v. P.S., 202 N.J. 232, 250, 997 A.2d 163 (2010). An appellate court “should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy.” Elders, supra, 192 N.J. at 244, 927 A.2d 1250 (quoting State v. Florence Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964)) (internal quotation marks omitted).
I respectfully submit that the trial court’s factual findings do not support, but rather undermine, the majority’s conclusion that the State failed to meet its evidentiary burden in this ease. The trial court found both of the police officers who testified before it, Trooper Kurt Kennedy and Trooper Gregory Austin of the New Jersey State Police, to be “credible and worthy of belief.” It credited the detailed evidence presented by the State, almost in its entirety. The court noted the genesis of the officers’ surveillance was the tip of a citizen informant that drug transactions were taking place in the area and that defendant Strong was seen with a sawed-off shotgun.[1] It considered the many hand-to-hand transactions witnessed by the officers conducting the surveillance. The court made specific factual findings regarding the condition of the front and back doors at 820 Line Street, the absence of the *545 electric meter, the broken windows, the presence of trash and human feces on the floor, and the holes in the interior walls. The trial court noted that the officers did not determine the name of the homeowner, and did not seek or obtain a warrant for 820 Line Street.
As the court specifically noted, it did not reject any of the testimony presented by the admittedly credible police officers. Instead, it disputed only the application of the legal test for abandonment to those facts. The trial court cited St,ate v. Andre Johnson, in which this Court held that “property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property.” 193 N.J. 528, 549, 940 A.2d 1185 (2008). The trial court did not conclude, however, that defendants were owners, renters, licensees or guests on the property. Instead, citing no law in support of its holding, the court construed defendants’ installation of the padlock on the front door of 820 Line Street to be an exercise of a constitutionally significant possessory interest in the property, and characterized the barricading of the unhinged back door as an assertion of a privacy claim.
In my opinion, the majority is mistaken in its deference to that determination. Only the trial court’s factual findings — not its legal conclusions — warrant deference on appeal; legal rulings are subject to de novo review. Handy, supra, 206 N.J. at 44-45, 18 A.3d 179 (citing Manalapan Realty, L.P. v. Twp. Comm, of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995)); see also Zabilowicz v. Kelsey, 200 N.J. 507, 512, 984 A.2d 872 (2009) (“We review the law de novo and owe no deference to the trial court and Appellate Division.”). When a case involves mixed questions of law and fact, the Court provides deference to the supported factual findings of the trial court, but reviews de novo the application of legal principles to such factual findings. State v. Harris, 181 N.J. 391, 416, 859 A.2d 364 (2004), cert. denied, 545 U.S. 1145, *546 125 S.Ct. 2973, 162 L.Ed.2d 898 (2005). The trial court’s determination on the legal question of abandonment, for purposes of the Fourth Amendment and N.J. Const. Art. I, Par. 7, is thus entitled to no deference on appeal.
I respectfully submit that the trial court’s application of the test for abandonment does not withstand de novo review. The court’s findings as to the condition of the house — a house that by virtue of its broken windows could be observed in its interior as well as its exterior before the police entry — provided ample evidence of abandonment. See State v. Perry, 124 N.J. 128, 149-50, 590 A.2d 624 (1991) (defendant, who was “in a house, not his own, that appeared vacant and whose front door was not only unlocked but open,” had no “constitutionally-reasonable expectation of privacy”); State v. Linton, 356 N.J.Super. 255, 256-57, 812 A.2d 382 (App.Div.2002) (defendant, who was using unlit, trash-filled house with broken lock and missing front window that had “all the indicia of abandonment” had no reasonable expectation of privacy). That evidence was further supported by the officers’ observations during surveillance. According to the witnesses, who were found to be credible by the trial court, 820 Line Street was used as a mere storage facility for drug transactions, briefly visited by individuals who retrieved items from the house and quickly departed.
In the trial court’s view, however, this compelling evidence of abandonment was trumped by nothing more than the placement of a padlock on the outside of the front door, and the use of an unidentified object to prop up the back door. I cannot agree with the trial court’s holding, to which the Appellate Division panel and majority defer, that these measures to secure 820 Line Street conferred upon defendants constitutionally significant property and privacy rights in the house. I concur with the observation of the Appellate Division panel in Linton that “a defendant who hides drugs in someone else’s vacant property has no eonstitutionally-reasonable expectation of privacy.” Linton, supra, 356 N.J.Super. at 259, 812 A.2d 382. I respectfully disagree that *547 defendants’ attempts to keep others out of the house are pivotal in the constitutional analysis.
Although its holding is premised upon State constitutional law rather than the Fourth Amendment, the majority cites as instructive authority a federal decision, United States v. Harrison, 689 F.3d 301 (3d Cir.2012), cert, denied, — U.S.-, 133 S.Ct. 1616, 185 L.Ed.2d 602 (2013). I respectfully suggest that Harrison does not support the majority’s holding. In Harrison, the defendant testified at his suppression hearing that he was current on his payments of $750 per month rent for the house at issue, in which he stayed one to two nights a week, gaining access by the use of a key to the front door. Id. at 304. Investigating the theft of a dirt bike, and aware of prior drug activity at the house, police officers observed the house in “severe disrepair” — boarded windows, trash all over the yard and a front door that was “unlocked and ajar.” Id. at 304-05. One officer, who had repeatedly entered the house on prior occasions to evict people from it, testified that the house had no working plumbing as demonstrated by the presence of feces in the bathtub and toilet, that there was candlelight visible from outside the house, which indicated there was no electricity, and that there were “[d]rug bags all over the place.” Id. at 305. Concluding that the house had been abandoned, officers conducted a warrantless search and discovered “a gun, scales, pills, and an unknown substance” located next to the defendant, who was arrested. Ibid.
I respectfully submit that the Third Circuit’s holding in Harrison underscores the State’s satisfaction of its burden in this case. The Third Circuit in Harrison evaluated this evidence under an evidentiary standard requiring “clear and unequivocal evidence” of abandonment. Id. at 307. The majority reaffirms that the preponderance of the evidence burden of proof, by an objectively reasonable standard, applies to abandonment cases in New Jersey. Ante at 528-30, 83 A.3d at 57. The court determined that the police officer’s entry into the defendant’s home did not violate the defendant’s Fourth Amendment rights because although the home *548 was not in fact abandoned, it had reasonably appeared to be abandoned at the time of the search. Id. at 312.
I consider the officers’ observations in Harrison to constitute less compelling evidence of abandonment than the evidence accepted as credible by the trial court in this case. The houses under scrutiny in both cases were in poor condition, evidently devoid of working plumbing and electricity. The house at issue here, however, bore a further indication of abandonment: its front door was padlocked on the outside, indicating that a person inside could not secure it, and its back door did not appear to function at all. Moreover, in contrast to the defendant’s tenancy interest established in Harrison, the evidence in this case suggests no connection between defendants and the house at 820 Line Street, other than defendant Strong’s exercise of day-to-day control over the front door, and an unknown individual’s installation of an object to buttress the back door. I respectfully suggest that if the government met the burden of proving that the officers’ conduct was reasonable in Harrison, the State more than satisfied its burden to prove that 820 Line Street was an abandoned house in this case.
In short, I respectfully suggest that if defendants’ installation of a padlock and bracing of a broken door gives rise to a constitutionally protected interest in the property that outweighs the evidence credited by the trial court, the legal standard for abandonment in search and seizure cases has little meaning. I consider the facts found by the trial court to demonstrate, not disprove, abandonment, and would not defer to the trial court’s interpretation of the law.
II.
In my view, the police officers who conducted the investigation in this case clearly met the governing standard of objective reasonableness. They sought no end run around the warrant requirement. Easily establishing probable cause, they obtained a warrant to enter and search the residence at 815 Line Street. *549 The officers distinguished 815 Line Street from its nearby neighbor, 820 Line Street, reasonably deducing from their observations that the former was occupied and the latter abandoned. I consider the evidence presented at the suppression hearing to satisfy the State’s burden of demonstrating abandonment, and I would reverse the determination of the Appellate Division. I respectfully dissent.
For affirmance and remandment — Justices LaVECCHIA, ALBIN and JUDGES RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned) — 4.
For reversal — Chief Justice RABNER and Justice PATTERSON — 2.

 According to the officers' affidavit submitted in support of their application for a search warrant, a confidential informant identified 820 Line Street as an “abandoned residence.”