**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1054-20

JAMEEL KEARNEY,

     Plaintiff-Respondent,

v.

BECKER TERRACE, LLC,

     Defendant-Appellant.

_____

Submitted October 4, 2021 – Decided December 9, 2021

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-016241-19.

Alsaidi & Chang, LLC, attorneys for appellant (Joseph A. Chang, of counsel; Jeffrey Zajac, on the briefs).

Taylor and Keyser, LLC, attorneys for respondent (Robert W. Keyser, of counsel; Jeffrey B. Datz, on the brief).

PER CURIAM

In this tax sale certificate foreclosure action, we consider defendant Becker Terrace, LLC's (Becker) argument that the court abused its discretion in denying a motion to vacate a default judgment under Rule 4:50-1.  Because we conclude Becker's failure to respond to the foreclosure proceedings was excusable, and there was a genuine factual dispute about whether the residential property Becker formerly owned was abandoned, we reverse.

I.

In 2018, Levi Rooz and his father, Sam Rooz,[1] formed Becker to purchase 29 Becker Terrace in the Township of Irvington as an investment property. After Becker failed to pay its fourth quarter property taxes, Irvington held a sale in December 2018 for those properties with unpaid municipal liens under N.J.S.A. 54:5-19.  Irvington acquired the property subject to Becker's right of redemption.  See N.J.S.A. 54:5-32.

At some point after the sale, Reinhardt Vilson, the Irvington housing inspector, allegedly viewed the property and determined it was abandoned as defined by the Abandoned Property Rehabilitation Act, N.J.S.A. 55:19-78 to -107 (APRA).  On March 7, 2019, Irvington published notice of the abandonment

---

[1]  We refer to Levi and Sam Rooz by their first names for ease of reference, intending no disrespect.

designation in the local newspaper, and Genia C. Philip, Irvington's Director of the Department of Economic Development and Grants Oversight and its Designated Abandoned Property Public Officer, sent a certified letter informing Becker of that finding.

Levi received Philip's letter and further acknowledged he was notified of the "abandonment issue" on February 22, 2019. Rather than pay Becker's outstanding tax obligation, he instead applied for a construction permit on March 26, 2019, which Irvington granted on April 10, 2019, despite already having deemed the property abandoned.

On April 9, 2019, Philip sent Becker notice that the tax lien certificate for 29 Becker Terrace would be sold at auction on May 21, 2019. After receiving the notice, Becker administratively appealed the abandonment designation under N.J.S.A. 55:19-55(e), and an Irvington official scheduled a hearing for May 8, 2019. After Becker's representative failed to appear at the hearing, the appeal was dismissed. Becker also failed to file a summary proceeding in the Law Division to challenge the adverse determination as permitted by N.J.S.A. 55:19-55(f).

On May 15, 2019, Levi emailed Vilson and attached photos of a construction permit and ongoing renovations at the property. He also certified

that he visited Vilson and informed him of the construction, but Vilson allegedly told Levi to pay the taxes in order to remove the property from the special tax sale list for abandoned properties. After Becker failed to pay the outstanding taxes, Irvington conducted a special tax sale where plaintiff Jameel Kearney was the successful bidder.

On May 30, 2019, Levi filed a Superior Court action to eject a squatter living at the property. He certified that at some point, his father permitted an individual to live "at the property to ensure that [it] was not being broken into." We discern from the record that the unnamed individual referenced refused to leave the premises.

In a May 31, 2019 certification, Philip attested based on her "review of township records" and of "the inspection report and photographs made by [Vilson] from his visual inspection of the property," that it was abandoned under the criteria enumerated in N.J.S.A. 55:19-81, including the threshold requirement that the property "has not been legally occupied for a period of at least six months prior to [May 31, 2019]."

Philip further stated that "construction was initiated on the property and was discontinued prior to completion," and "no construction ha[d] taken place for at least six months." She also certified that "at least one installment of

4

property tax remains unpaid and delinquent," and "the property has been determined to be a nuisance in accordance with section 5 of P.L. 2003, c. 210 (C.55:19-82)." She did not attach any supporting documents to her May 31 certification, however.

On August 29, 2019, plaintiff sent written notice by regular and certified mail to Becker's registered address in Rahway of his intention to institute a foreclosure action to bar Becker's right of redemption, but Levi claimed neither he nor his father received the correspondence. On October 2, 2019, plaintiff filed a foreclosure complaint.

On January 3, 2020, plaintiff published notice of the foreclosure proceedings in The Star Ledger and, on January 6, 2020, mailed notice by certified and regular mail to Sam as Becker's registered agent at his Rahway address. The certified mail was returned as undeliverable, but the regular mail was never returned. Plaintiff also posted notice of the proceedings at the Irvington property, at the Tax Collector's office, and at the Essex County Register's office. Becker failed to answer or otherwise respond to the complaint. In April 2020, Sam tragically died from COVID-19.

On June 3, 2020, Irvington's tax collector certified that a redemption of the special tax sale certificate had not occurred within the required forty-five-

day period. The trial court granted plaintiff's application for final judgment on July 14, 2020, barring Becker's right of redemption and vesting plaintiff with title to the property. Plaintiff mailed a copy of the final judgment to Becker on July 21, 2020.

After receiving the judgment, Becker served Irvington with an Open Public Records Act (OPRA) request on July 28, 2020. The request sought information relating to all violation notices, inspection reports, notice of "any tax sale or foreclosure" and records relating to the abandoned property determination. Irvington responded to the OPRA request by informing Levi that no responsive documents existed.

Less than a month later, on August 13, 2020, Becker filed a motion to vacate the final judgment under Rule 4:50-1. After considering the parties' submissions, which included two certifications with supporting documents from Levi, the court denied Becker's application in a November 13, 2020 order.

In its accompanying oral opinion, the court found Becker clearly had notice of the proceedings and plaintiff properly served the complaint consistent with the Rules. The court acknowledged and summarily rejected Becker's challenge to Irvington's abandonment designation, explaining that such a determination is made by the municipality and Becker failed to appear at the

6

scheduled appeal hearing. The court concluded Becker failed to establish its right to relief under Rule 4:50-1 as it failed to "take the steps . . . necessary to protect itself."

Becker raises two points on appeal.[2] First, it argues the court committed error in failing to vacate the final judgment because plaintiff failed to take the "additional constitutionally mandated steps to serve the complaint after learning of the undelivered certified mail," rendering the final judgment void ab initio. Second, he contends the court misapplied its discretion by failing to vacate the month-old default judgment under Rule 4:50-1(c) and (f) in the face of its allegations of excusable neglect and a meritorious defense.[3]

With respect to its second argument, Becker maintains that the final judgment was grounded upon the factually unsupported determination that the property was abandoned, thereby "creat[ing] a defective foundation for the subsequent foreclosure action." Becker stresses that Irvington incorrectly categorized the property as vacant, falsely asserted that construction at the

---

[2] We have reorganized Becker's arguments for purposes of clarity.

[3] We consider defendant's arguments under Rule 4:50-1(a) and (f), despite its reliance on subsection (c), as that provision addresses instances when a final judgment was improperly entered based on claims of fraud or misrepresentation, which are neither asserted nor present here. We also consider Becker's contentions under subsections (a) and (f), as its merits arguments clearly relate to those two subsections.

A-1054-20

property had been discontinued, and failed to provide any of the inspection records referenced in the Philip certification.

We have considered Becker's first point concerning service and determine it is of insufficient merit to warrant discussion in a written opinion. R. 2:11–3(e)(1)(E). We agree, however, with Becker's second contention and determine the court erred in failing to vacate the final judgment, considering the factual disputes in the record regarding Irvington's abandonment designation. Finally, we conclude Becker's failure to respond to the complaint was excusable under the circumstances.

## II.

We review a court's determination under Rule 4:50-1 for an abuse of discretion. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). Rule 4:50-1 states "the court may relieve a party . . . from a final judgment . . . for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; . . . (d) the judgment or order is void; . . . or (f) any other reason justifying relief from the operation of the judgment or order." "The rule is 'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in

8

any given case.'" U.S. Nat'l Bank Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (citation and internal quotation marks omitted).

In the context of a default judgment "[a] court should view 'the opening of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" Mancini v. EDS ex rel N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964)). "In the tax sale certificate foreclosure context considerations of public policy and equity are also taken into account." M&D Assocs. v. Mandara, 366 N.J. Super. 341, 350 (App. Div. 2004).

Rule 4:50-1(a) requires a showing of excusable neglect and a meritorious defense. Guillaume, 209 N.J. at 468. "'Excusable neglect' may be found when the default was 'attributable to an honest mistake that is compatible with due diligence or reasonable prudence.'" Ibid. (quoting Mancini, 132 N.J. at 335).

With respect to Rule 4:50-1(f), the Supreme Court stated: "'No categorization can be made of the situations which would warrant redress under [that subsection]. [T]he very essence of [subsection] (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.'" DEG, LLC v. Twp. of

Fairfield, 198 N.J. 242, 269-70 (2009) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)) (second alteration in original).  We have stated that "general equitable principles . . . apply to the remedy of foreclosure.  Foreclosure is a harsh remedy and equity abhors a forfeiture.  A court of equity may invoke its inherent equitable powers to avoid a forfeiture and deny the remedy of foreclosure." Sovereign Bank v. Kuelzow, 297 N.J. Super. 187, 198 (App. Div. 1997) (citation omitted).

APRA is intended as a tool for local governments to rehabilitate abandoned properties, avoid blight and declining property values, see N.J.S.A. 55:19-79, and designate properties as abandoned and set them aside for special tax sales.  N.J.S.A. 55:19-101.  Under APRA, successful bidders of property sold at a special tax sale must immediately move to foreclose on the property in order to bar the owner's statutory right of redemption.  N.J.S.A. 55:19-86(a)-(b).  The Act also requires notice to the property owner "[a]t least 30 days before filing the complaint" that "inform[s] the owner and interested parties . . . of those criteria that led to a determination of abandonment."  Ibid.

APRA also sets forth the criteria for an "abandoned" designation.  "[A]ny property that has not been legally occupied for a period of six months" will be deemed abandoned if it meets at least one of four additional criteria.  N.J.S.A.

10

55:19-81. A squatter or trespasser, however, will not qualify as a "legal occupier" of the property. See State v. Linton, 356 N.J. Super. 255, 259 (App. Div. 2002) (finding that a squatter had no constitutionally reasonable expectation of privacy where they had no legal right to occupy abandoned property). If the threshold occupancy requirement is met, the municipality must also show one of four elements:

> a. [t]he property is in need of rehabilitation in the reasonable judgment of the public officer, and no rehabilitation has taken place during that six-month period; b. [c]onstruction was initiated on the property and was discontinued . . . ; c. [a]t least one installment of property tax remains unpaid and delinquent . . . ; or d. The property has been determined to be a nuisance.
>
> [N.J.S.A. 55:19-81(a)-(d) (emphasis added).]

Once an abandoned designation has been made, the purchaser of the tax sale certificate may commence a foreclosure proceeding, but the abandoned property owner may redeem his rights at any time, subject to court order. N.J.S.A. 54:19–58 ("After the foreclosure action is instituted, the right to redeem shall exist and continue to exist until barred by the judgment of the Superior Court."). A tax sale certificate "creates only a lien on the premises" and it is "not an outright conveyance;" it conveys the lien interest of the taxing authority. Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159,

163 (App. Div. 2005).  Additionally, the "interest of the holder of the tax sale certificate is entirely subordinate to the statutory right of redemption of the property owner." Id. at 164 (citing Manning v. Kasdin, 97 N.J. Super. 406, 417, (App. Div. 1967)).

Applying these principles, we conclude the court misapplied its discretion in denying Becker's motion.  The propriety of Irvington's abandonment designation was a critical and necessary determination for the court to make as it necessarily informs whether vacating the default judgment was appropriate under Rule 4:50-1.  This is so because the holder of a tax sale certificate—like plaintiff—has no right to foreclose sooner than two years from the certificate's acquisition unless the property is abandoned within the meaning of APRA, in which case the foreclosure action may be commenced "any time" after the certificate's acquisition.  See N.J.S.A. 54:5-86(a)-(b).  As plaintiff commenced this action sooner than two years based on Irvington's abandonment designation, that finding was of critical import.

Here, Philip possessed no firsthand knowledge of the condition of the property, nor whether any individual legally occupied the premises in the six months preceding the abandonment designation or the foreclosure proceedings. See, e.g., Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 599 (App. Div.

12

2011) ("A certification will support the grant of summary judgment only if the material facts alleged therein are based, as required by Rule 1:6–6, on 'personal knowledge.'") (quoting Claypotch v. Hesller, Inc., 360 N.J. Super. 472, 289 (App. Div. 2003)).  Her conclusion that the property was abandoned was based entirely on certain unidentified records, and those prepared by Vilson.  Further, she never appended to her certification the referenced and unauthenticated documents that supported those conclusions, nor were they submitted to the court for its consideration.

These deficiencies were not inconsequential.  Indeed, while Becker's failure to pay its taxes was conceded, the remaining facts supporting the abandonment designation were not.  For example, as noted, a threshold requirement before a property is deemed abandoned under N.J.S.A. 55:19-81 is the absence of proof that it was lawfully occupied for six months.  Although Philip so certified, again without appending any supporting records or firsthand knowledge, Levi attested that before commencing the ejectment proceeding, his father had "someone living at the property" to ensure it was not vandalized.  While he later successfully ejected the individual as an unauthorized "squatter," his certification can fairly be read to support the conclusion that the squatter, or another unidentified individual, was lawfully residing in the residence at some

13

period during the relevant six-month period before Philip certified the property as abandoned.

Second, contrary to Philip's attestations that construction at the property was "discontinued" and "no construction has taken place for at least six months," Levi presented competent proofs that a construction permit was issued by Irvington on April 10, 2019, less than two months prior to Philip's certification. Levi also submitted additional proofs showing extensive work at the residence.

Further, without appending supporting documentation to her certification, and specifically those which memorialized Vilson's observations from his inspection, we cannot discern how Philip or Vilson knew the property had not been legally occupied for the six months prior to the certification, or any other fact that would support the abandonment determination except for Becker's failure to pay the required taxes.

We also cannot determine if the materials relied upon by Philip were appropriate business records under N.J.R.E. 803(c)(6), and particularly if they were made "at or near the time of the observation by a person with actual knowledge or from information supplied by such a person," or if the referenced documents were "made in the regular course of business." That, of course, was not the fault of Becker, as it disputed critical factual statements regarding

14

Irvington's abandonment designation made in Philip's certification after making timely OPRA requests and being informed that no such documents existed related to that finding.

We, of course, draw no conclusions on the abandonment issue except to observe the presence of genuine factual disputes that should be litigated and adjudicated. Becker has demonstrated a meritorious defense under Rule 4:50-1(a) and (f), not only because of Levi's own affirmative allegations about the property but also because of the inadequacies in the Philip certification.

We are also satisfied that Levi provided sufficient reasons for failing to file a timely answer or otherwise participate in the foreclosure proceedings. Approximately three months after service of the complaint, his father and partner in Becker, died from COVID-19 after being sick for "some time" prior. Levi also verified that his mother cared for Sam at their residence in Brooklyn before his death, and out of caution during the pandemic, he did not return to New Jersey. Levi stated that Sam's illness meant "normal business practices" were not followed and the "office was not being visited normally" during this time period.

While Becker could, and should have, participated in the permissive proceeding spelled out in N.J.S.A. 55:19-55(e)-(f), which likely would have

15

avoided the default judgment in the first instance, we do not consider that failure to be a dispositive jurisdictional defect as plaintiff argues, and are satisfied that Becker's failure to answer the complaint, or otherwise respond, was excusable. That conclusion is supported by the unique circumstances presented which include Sam's death, Becker's filing of a motion to vacate less than a month after the entry of judgment, and, as noted, the absence of a competent certification supporting the abandonment determination, coupled with Irvington's subsequent denial that any documents related to that designation existed. See, e.g., BV001 Reo Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 128-30 (App. Div. 2021).

In sum, we conclude the court mistakenly failed to "view with great liberality," see Mancini, 132 N.J. at 334, Becker's reasonable arguments regarding both its claim of excusable neglect and its meritorious defense. We accordingly reverse the court's decision to deny the motion to vacate the default judgment and remand the matter for entry of an order granting Becker leave to file a pleading responsive to the complaint and for necessary proceedings to resolve this foreclosure action. The final judgment is consequently vacated, effective immediately, without prejudice to the outcome of the remanded proceedings.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION