**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3538-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHAWN BAXLEY,

     Defendant-Appellant.

_____

Argued April 23, 2024 – Decided May 1, 2024

Before Judges Enright and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 21-08-0662.

Margaret Ruth McLane, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Margaret Ruth McLane, of counsel and on the briefs).

Deborah Cronin Bartolomey, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Deborah Cronin Bartolomey, of counsel and on the brief).

PER CURIAM

Defendant Shawn Baxley appeals from a May 19, 2022 order denying his motion to suppress a weapon seized without a warrant. We affirm.

I.

We summarize the facts from the motion record. On the night of April 5, 2021, Detective Anthony Cancel responded to a report of a shooting in Jersey City near Lexington Avenue and John F. Kennedy Boulevard. When he arrived on the scene, the detective learned two female victims were struck by gunfire during the incident and taken from the scene by ambulance. Upon further investigation, he found shell casings in the area.

Detective Cancel canvassed the area and was able to recover two surveillance videos from the shooting incident. When he reviewed the footage approximately twenty to thirty minutes after the shooting, he noted one of the videos depicted a person in a dark-colored Audi sedan stop on Lexington Avenue, exit the vehicle, and engage in a verbal dispute with another individual before exchanging several rounds of gunfire. The video also showed the Audi driver run into what appeared to be an alley between 57 and 61 Lexington

A-3538-22

Avenue,[1] and exit the alley shortly thereafter. The Audi driver then got back into the Audi and left the scene.

Detective Cancel went to the area on Lexington Avenue that was shown on the video, and inspected the location where the Audi driver was seen exiting the alley. The detective "look[ed] for a firearm that was possibly . . . discarded by" the suspected shooter. Cancel determined the alley was actually the driveway of a home on 61 Lexington Avenue. While at that location, Cancel recovered additional shell casings. He also knocked on the doors of homes at 57, 60, and 61 Lexington Avenue to speak with anyone there, based on his belief the Audi driver "may have discarded the firearm" in one of those locations.

No one answered the door at 61 Lexington Avenue. But because the driveway to the property was fully accessible, no signs were posted instructing the public to keep away, and the gate to the backyard was open, Cancel briefly inspected the driveway and rear yard of this property. Finding no evidence of a firearm, Cancel then spotted a low garage "the next yard over," at 63 Lexington Avenue. Based on his suspicion the fleeing shooter may have discarded a firearm on the roof of that garage, Cancel spoke to a female occupant of the

_____

[1] As the motion judge noted in his written opinion, "there is no 59 Lexington Avenue" and "57 and 61 [Lexington Avenue] are adjacent properties."

3

home at 57 Lexington Avenue and asked to use her deck "to see the top of the roof of the low garage . . . next door to 61 [Lexington Avenue]." She consented.

While on the deck at 57 Lexington Avenue, Cancel used a flashlight to illuminate the silver rooftop of the garage on 63 Lexington Avenue. He immediately saw "a black object in the middle of the roof," and believed it "could have been a . . . discarded firearm." Cancel saw no other items on the roof.

After leaving the deck, Cancel "climbed on[to a] low fence" next to the garage at 63 Lexington Avenue to secure a better "vantage point" for viewing the top of the roof. At that point, it became "more apparent" to Cancel that the black object on the roof "was a firearm." Detective Kevin Lowry of the Jersey City Cease Fire Unit then recovered the firearm from the roof by climbing a ladder he found at "the rear of 61 Lexington" Avenue.

The police subsequently determined from surveillance footage that the Audi captured on video from the night of the shooting was registered to defendant. Accordingly, they arrested him as a suspect in the incident.

In August 2021, defendant was charged under Hudson County Indictment No. 21-08-0662 with: first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:11-3(a)(2); two counts of second-degree aggravated assault,

N.J.S.A. 2C:12-1(b)(1); second-degree unlawful possession of a handgun with a defaced serial number, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d). The next month, he moved to suppress the firearm recovered from 63 Lexington Avenue.

The trial court conducted an evidentiary hearing on the suppression motion in February 2022. The State called Detectives Cancel and Lowry to testify. Each detective described his involvement with the investigation of the April 5, 2021 shooting incident and the recovery of the firearm from 63 Lexington Avenue. The State also played and moved into evidence the surveillance footage Detective Cancel recovered from the incident.

Elizabeth Harley, the owner of 61 Lexington Avenue and defendant's aunt, testified for the defense. She stated that although she never lived at 61 Lexington Avenue, she inherited the property from her deceased mother a few months before the shooting incident. Harley also testified she was not at 61 Lexington Avenue when the shooting occurred, and was unaware if anyone else was there that night. Further, she testified no one had permission to enter this property, but admitted the gate on property "was always open." Harley also

denied keeping a ladder at the property and denied that the ladder the police used to retrieve the firearm from 63 Lexington Avenue was hers.

On May 19, 2022, the trial court entered an order denying the suppression motion. In a written opinion accompanying the order, the judge initially found defendant had standing to "challenge the recovery of the handgun he [wa]s charged with possessing."

Regarding whether the search and seizure of the gun from 63 Lexington Avenue was lawful, the judge found that because "Detective Cancel was on the deck of 57 Lexington Avenue with the occupant's consent" when he saw the gun, the detective "had a right to be in th[at] location." Further, the judge concluded "the driveway and backyard of 61 Lexington Avenue constitute[d] a semi-private area of that home's curtilage."[2] The judge explained, "[b]oth areas [we]re

---

[2] "Certain lands adjacent to a dwelling called the 'curtilage' have always been viewed as falling within the coverage of the Fourth Amendment." 1 Wayne R. LaFave, Search and Seizure § 2.3(f) (3d ed. 1996). Whether a part of the curtilage is afforded Fourth Amendment protection depends on "the proximity of the area . . . to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987). It is also well established that

> a portion of the curtilage, being the normal route of access for anyone visiting the premises, is "only a semi-

adjacent to the home," and "the resident[] of 61 Lexington Avenue took minimal steps to protect the area from public access." Further, the judge found "[t]he gate across the driveway" at 61 Lexington Avenue "was left open on a regular basis, and there were no signs indicating that visitors or other members of the public should keep off that portion of the property."

Based on Detective Cancel's testimony, the judge also determined the detective had probable cause to believe the gun he saw in plain view "relate[d] to criminal activity," considering the detective "stated multiple times throughout his testimony that he went into the alleyway and onto the deck of 57 Lexington Avenue in search of a discarded firearm," and "[h]e undertook these steps shortly after a shooting was captured on camera and an individual was seen running into the alleyway at issue and exiting the same alleyway a few seconds later."

---

private area." . . . Thus, when the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.

[LaFave, § 2.3(f) (footnotes omitted) (quoting United States v. Magana, 512 F.2d 1169 (9th Cir. 1975)).]

Accordingly, the judge found "Detective Cancel had more than enough reason to believe that the object was a discarded firearm." The judge added, "[t]hough Detective Cancel's suspicion that the object was a firearm was ultimately correct, our case law does not require absolute certainty in an officer's determination that an object in plain view is, in fact, evidence of a crime." The judge also found:

> Detective Cancel possessed sufficient probable cause at the time of [his] observation to believe that the black object seen on the roof was a gun. As the criminal nature of the object was immediately apparent to Detective Cancel, the plain view exception to the warrant requirement justified officers' seizure of the gun, and no constitutional violation occurred warranting suppression in this case.

In April 2023, defendant pled guilty to the second-degree charge of possession of a firearm for an unlawful purpose. Two months later, the judge sentenced defendant to a five-year prison term, subject to a forty-two-month period of parole ineligibility. The judge entered a conforming judgment of conviction (JOC) on June 20, 2023.[3]

---

[3] The parties agree the JOC should be amended to reflect the judge found aggravating factor nine (need to deter), N.J.S.A. 2C:44-1(a)(9), at sentencing, not aggravating factor seven (defendant committed the offense pursuant to an agreement involving a pecuniary incentive), N.J.S.A. 2C:44-1(a)(7), as shown on the existing JOC. Accordingly, we remand this matter solely to allow the trial court to amend the JOC to correct the clerical error.

II.

On appeal, defendant raises the following argument for our consideration:

POINT I

THE EVIDENCE MUST BE SUPPRESSED BECAUSE NO VALID EXCEPTION TO THE WARRANT REQUIREMENT ALLOWED POLICE TO ENTER PRIVATE PROPERTY TO RETRIEVE THE GUN.

Our scope of review of a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021); State v. Nelson, 237 N.J. 540, 551 (2019); State v. Boone, 232 N.J. 417, 425-26 (2017); State v. Robinson, 200 N.J. 1, 15 (2009). "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when those findings are supported by sufficient credible evidence in the record." State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). We give deference to those factual findings in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

Thus, "[w]e ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand

9

intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions to be drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022); State v. Hubbard, 222 N.J. 249, 263 (2015).

Both the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of our State Constitution protect "against unreasonable searches and seizures" and prohibit the issuance of warrants in the absence of probable cause. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see also State v. Robinson, 228 N.J. 529, 543-44 (2017). "[S]earches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." Goldsmith, 251 N.J. at 398 (quoting Elders, 192 N.J. at 246). To overcome the presumption, "the State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it f[ell] within one of the few well-delineated exceptions to the warrant requirement." State v. Bryant, 227 N.J. 60, 69-70 (2016) (alteration in original) (quoting State v. Johnson, 193 N.J. 528, 552 (2008)). One such exception is the "plain view" exception.

Under the plain view exception, an officer may, without a warrant, "seize evidence or contraband that is in plain view." State v. Gonzales, 227 N.J. 77,

90 (2016).  To lawfully seize evidence or contraband under this exception, the "officer must lawfully be in the area where [the officer] observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized items is evidence of a crime."  Id. at 101.

"Any constitutional challenge to the search of a place or seizure of an item must begin with" a court considering whether a defendant has standing to pursue the challenge.  State v. Randolph, 228 N.J. 566, 581 (2017).  "If the defendant has standing," a court then must determine whether "the police secure[d] a warrant to search or seize by constitutional means, and if no warrant issued," whether "the search or seizure [was] justified by an exception to the warrant requirement."  Ibid.  "When the seizure of evidence is the result of the State's unconstitutional action, the principal remedy for violation of the constitutional right to be free from unreasonable searches and seizures is exclusion of the evidence seized."  Bryant, 227 N.J. at 71.

Regarding the issue of standing, "under Article I, Paragraph 7 of the New Jersey Constitution, 'a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if [the defendant] has a proprietary, possessory[,] or participatory interest in either the place searched or the property seized.'"  Randolph, 228 N.J. at 581-82 (quoting State

11

v. Alston, 88 N.J. 211, 228 (1981)).  A defendant charged with a possessory offense of the evidence seized, as in this case, has automatic standing to challenge a search or seizure, unless the State establishes an exception to that rule.  Id. at 581, 585; State v. Lamb, 218 N.J. 300, 313 (2014); Alston, 88 N.J. at 228.  "Under New Jersey Law, the State bears the burden of showing that [a] defendant has no proprietary, possessory, or participatory interest in either the place searched[,] or the property seized."  Randolph, 228 N.J. at 582 (citing State v. Brown, 216 N.J. 508, 528 (2014)).

Under the three exceptions to the automatic standing rule for searches of real property, an accused will not have standing to challenge the search of:  (1) an "abandoned property,"[4] (2) "property on which he was trespassing," or (3) "property from which he was lawfully evicted."  Randolph, 228 N.J. at 585 (citing Brown, 216 N.J. at 529 and generally, State v. Hinton, 216 N.J. 211 (2013)).  "[T]o strip a defendant of automatic standing to challenge a search,"

_____

[4] In fact, our Supreme Court recently held, "[w]hen property is abandoned, . . . the defendant has 'no right to challenge the search or seizure of that property.'" State v. Gartrell, 256 N.J. 241, 250 (2024) (quoting Johnson, 193 N.J. at 548). "[P]roperty is abandoned only if '(1) a person has either actual or constructive control or dominion over property; (2) [the person] knowingly and voluntarily relinquishes any possessory or ownership interest in the property; and (3) there are no other apparent or known owners of the property.'"  Id. at 251 (quoting State v. Carvajal, 202 N.J. 214, 223, 225 (2010)).

the State bears the burden of proving one of these exceptions by a preponderance of the evidence. Ibid. (citing Brown, 216 N.J. at 527-28).

Guided by these principles, we decline to conclude on the limited record before us that the judge erred in finding the State failed to establish defendant had no standing to challenge the constitutionality of the search. However, our resolution of the standing issue does not end our inquiry.

"A defendant's automatic standing to file a motion to suppress . . . does not equate to a finding that he or she has a substantive right of privacy in the place searched that mandates the grant of that motion." Hinton, 216 N.J. at 235 (citing Johnson, 193 N.J. at 547). Indeed, "[e]ven when a defendant has automatic standing, if . . . the merits rest on whether [a] defendant possesses a reasonable expectation of privacy, [a] court must address that issue as part of the substantive constitutional analysis. That inquiry is separate and distinct from the question of standing." Id. at 234.

"Under state law, a 'defendant must show that a reasonable or legitimate expectation of privacy was trammeled by government authorities'" to prevail on a suppression motion. Id. at 233 (quoting State v. Evers, 175 N.J. 355, 368-69 (2003)); see also State v. Taylor, 440 N.J. Super. 515, 522 (App. Div. 2015) ("Absent a reasonable expectation of privacy in the place or thing searched, an

individual is not entitled to protection under either the Fourth Amendment or Article I, Paragraph 7 of the New Jersey Constitution.").

Here, defendant failed to show he had any legitimate expectation of privacy in the areas of Lexington Avenue that were searched and seized following the shooting incident. In fact, "notwithstanding the residential setting of the police activity," Hinton, 216 N.J. at 236, we are convinced defendant had no objectively reasonable expectation of privacy regarding the properties at 57, 61, or 63 Lexington Avenue because the record is devoid of any evidence he rented, owned, or stayed at any of these properties prior to the April 5, 2021 incident.

Under these circumstances, we are persuaded the police action that occurred on April 5, 2021 did not constitute a "search" in violation of defendant's rights under either the Fourth Amendment of the United States Constitution or Article I of the New Jersey Constitution. See id. at 239-40; see also State v. Linton, 356 N.J. Super. 255, 259 (App. Div. 2002) (holding the defendant "ha[d] no constitutionally-reasonable expectation of privacy" for drugs he concealed in "someone else's vacant property."). That said, even if we concluded a search had occurred, we are satisfied, for the reasons expressed in the motion judge's thoughtful written opinion, the gun recovered from 63

Lexington Avenue was lawfully discovered in plain view, and therefore, the seizure of the gun was constitutional.

To the extent we have not addressed defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION